Cherry Lee **WAGNON** et al., Appellees,

v.

Roy Lee **GAINES** et al., Appellants.

No. 45732.

Court of Appeals of Oklahoma,
Division No. 2.

July 23, 1974.

Released for Publication by the Court of Appeals Aug. 15, 1974.

Jack B. Sellers, Sapulpa, for appellees; Joe A. Moore, Memphis, Tenn.; of counsel on brief.

Dan A. Rogers, Tulsa, for appellant Freddie Walker Martin.

BRIGHTMIRE, Presiding Judge.

This appeal was filed by defendant Freddie Walker Martin. It grows from the same facts and trial described in the opinion of Wagnon v. Carter, No. 45,712, handed down this date and appearing earlier herein. We refer to that case for facts not mentioned here.

Defendant Walker presents some ten "propositions" of error.

His first one is that the trial court "erred in proceeding to trial without a guardian ad litem having been appointed to conduct" his defense because he "was a minor at all stages of the proceedings except during the actual trial."

For this idea reliance is placed upon the provisions of 12 O.S.1971 §§ 228 and 229 and two decisions: Lane v. Snitz, Okl., 389 P.2d 962 (1964) and Allen v. Hickman, Okl., 383 P.2d 676 (1963).

Section 228 specifies that the "defense of an infant must be by the guardian of his estate, if any," and if none then his defense must be by a guardian ad litem who may be appointed by the court but not "until after the service of the summons."

Section 229 provides that the appointment of a guardian ad litem "may be made upon the application of the infant" if he is at least 14 years old. If he is younger "or neglect so to apply, the appointment may be made upon the application of any friend of the infant, or that of the plaintiff in the action."

Defendant's extensive quote from Lane includes this fundamental principle: "The general rule is that the failure to appoint a guardian ad litem for an infant defendant who is properly served renders *a judgment against the minor* voidable." (emphasis ours)

The short answer to this proposition is then that the court in the instant case did not render a judgment against a minor. Admittedly defendant was an adult when tried and his rights adjudicated.

As an adult, defendant announced ready for trial, cross-examined witnesses, offered himself and others as witnesses in his own behalf after which judgment was rendered against him in accord with a jury verdict. Consequently he will not be heard now to complain that such judgment is erroneous because no guardian ad litem was appointed to represent him during the early stages of the litigation. Horner v. Reid, 177 Okl. 154, 57 P.2d 857 (1936).

The second proposition is that entering judgment against defendant Martin was a

mistake because it was based upon the imputation of an alleged agent's negligence. The core of this argument is that 15 O.S. 1971 § 17 forbids a minor to "give a delegation of power"—a contention considered and found to be without merit in the first of this series of appeals. See Wagnon et al v. Carter et al., No. 45,712.

■ Defendant's third complaint is that the trial court refused to allow him to amend his answer by verifying a denial of agency at the close of plaintiff's case in chief. The point centers around 12 O.S. 1971 § 286 specifying that an allegation of agency shall be taken as true unless denied by "affidavit of the party, his agent or attorney," and § 287 providing that § 286 shall not apply to an answer filed by the guardian of a defendant infant. The thread of defendant's argument is that had a guardian ad litem been appointed for him a verification would not have been required in order for defendant to challenge the allegation of agency because he was still a minor at the time he filed his answer. This being true, reasons defendant, we should treat the answer as though it had been filed by a guardian and therefore as having raised the issue of agency when filed. And if the court cannot accept that rationale defendant suggests it ought to hold that even if § 286 came into play when defendant reached his majority "before the trial of this lawsuit, defendant should have been permitted to rely on § 287 and remain silent on the subject until plaintiffs finished putting on their case relying upon the admission, then allow defendant to verify his answer for the purpose of revoking the admission and then sustain defendant's demurrer to plaintiffs' evidence because they failed to prove an element essential to establish liability against defendant!

The court with a fair degree of perspicacity rejected the request to amend as untimely saying:

"Let me say this, if I do allow you to amend then your demurrer is good because there wasn't any proof whereas under the law the plaintiff isn't required to prove it, and the reason he didn't prove it, as I understand, is that it wasn't an issue so it doesn't appear at this particular stage of the proceedings at the close of the plaintiff's testimony and evidence, that I can allow you to amend which would, in effect, have the result of sustaining your demurrer, and I think that would certainly prejudice this plaintiff and put the plaintiff in a position that he hadn't ought to be, under the law, so the . . . motion . . . to amend to show verification, will be denied . . . ."

Defendant insists the court mistreated him by such action. He says under 12 O. S.1971 § 317 [1] the court could and should have allowed him to amend citing Hall v. North Plains Concrete Serv., Inc., Okl., 425 P.2d 941 (1966); Shade v. Miller, 131 Okl. 23, 267 P. 626 (1928); and Oklahoma City v. Lockert, Okl., 484 P.2d 523 (1971).

Ironically these cases dramatically destroy defendant's contention and point up the correctness of the trial court's ruling. For instance Hall takes note of the fact that scope of the discretion granted in § 317 is restricted to allowing amendments in the "furtherance of justice" in general and in particular to those requested just before or during trial which do "not substantially change the claim or defense." So in Hall the appellate court found no harm resulted from allowing the defendant to verify a

---

1. "The court, may, before or after judgment, in furtherance of justice, and on such terms as may be proper, amend any pleading, process or proceeding by adding or striking out the name of any party, or correcting a mistake in the name of a party, or a mistake in any other respect, or by inserting other allegations material to the case, or conform the plead-ing or proceeding to the facts proved, *when such amendment does not change the nature of the transaction or occurrence* that is the subject of the claim or defense; and when any proceeding fails to conform, in any respect, to the provisions of this code, the court may permit the same to be made conformable thereto by amendment." (emphasis ours)

denial of agency at the close of the plaintiff's case in chief because he then "overruled the demurrer and the trial proceeded," holding the admission of agency still existed notwithstanding the verification because it came too late to be effective. This procedure was criticized on the ground that once the amendment was made it was effective ab initio. Inferentially the trial court's inherent sense of justice would have prevailed had he denied defendant's motion to amend.[2]

In *Shade* the trial court was found to have retarded justice by refusing to allow a defrauded plaintiff to amend her petition and include additional allegations of fraud *before trial*, then limiting her proof at trial to the allegations of her original petition, and finally rendering judgment for defendant because plaintiff had not proved what she wanted to allege in her amended petition! Characterizing the acts she alleged as "a gross repulsive fraud" and the rejected evidence she offered (county clerk records and other documents) as tending "to directly connect defendant Miller with the fraud," the court held refusal of the pretrial amendment defeated justice—a result contrary to that contemplated by § 317. And so the capricious action of the trial court was reversed. As the court noted the requested amendment did not change, but merely amplified, the plaintiff's claim.

In *Lockert* the trial court was directed to allow a condemnor to amend a defective property description in the municipality's petition because: "The matter was *not at trial* and defendants were not prejudiced by City's delay in asking to amend. The land had been taken . . . and defendants had withdrawn the commissioners' award years before." (emphasis ours) Again it is implicit in this holding that no substantial change in plaintiff's claim would result from the amendment.

We hold defendant's request to amend came too late and the trial court correctly assessed the situation at the time the request to verify was made. No doubt can there be that to allow the amendment would have been tantamount to giving birth to a vital issue—an illegitimate issue born to pleading parents unwedded by a proper pretrial denial and one that plaintiff had not attempted to prove because of its erstwhile nonexistence.

■ The fourth and fifth propositions relate to the third and in effect complain of the trial court's failure to hold no agency was proved, or in any event submit the "issue whether agency existed" to the jury. In view of our disposition of the third proposition, it follows defendant Martin admitted Gaines was acting as his agent at the time of the wreck, hence no issue there was for the jury to resolve.

■ In his sixth and seventh errors assigned defendant criticizes the court for admitting a police officer's statement which disclosed he had given traffic citations to both drivers, and for later instructing the jury to ignore such evidence. Little merit can we find in this complaint. The statement was offered by a co-defendant without any objection from the defendant appealing here—Martin. The instruction was fundamentally correct and while it may have been unnecessary to give it we fail to see how doing so could be very prejudicial to defendant under the circumstances surrounding reception of the evidence in the first place as discussed in Wagon v. Gaines, No. 46,726.

The last three alleged errors tendered by defendant—(1) the forms of the verdicts were not right, (2) a new trial should not have been denied, (3) the case should not have been tried in Tulsa county because it was filed in Pawnee county—warrant little consideration.

2. On rehearing the court seemed to recognize a serious question still existed about whether the consequences of allowing the amendment furthered justice, but avoided facing it by in effect holding the evidence conclusively showed there was no agency—a seemingly inappropriate result.

Aside from their substantive insubstantiality the most noteworthy thing about them is their triviality. We find no fault with the verdict forms used or with the fact that a Tulsa county judge and jury tried the case.

And obviously absence from the record of reversible error furnished a sound basis for denying defendant a new trial.

Affirmed.

BACON, and NEPTUNE, JJ., concur.