George E. BIBO, Appellant,

v.

JEFFREY'S RESTAURANT, a partnership consisting of August Johnson, Marsha L. Johnson, James Lundgren, Arthur L. Martinez, Lincoln Corporation, an Alaskan corporation, Taku Development Co., Inc., an Alaskan corporation, Alaska Pacific Properties, Inc., an Alaskan corporation, August Johnson, Martha L. Johnson, James Lundgren, Arthur L. Martinez, Karen Meadows, and Miriam Johnson, Appellees.

No. S–2266.

Supreme Court of Alaska.

Feb. 10, 1989.

Lloyd I. Hoppner and Joseph Paskvan, Hoppner & Paskvan, P.C., Fairbanks, for appellant.

Gail M. Ballou, Fairbanks, for appellee Alaska Pacific Properties, Inc.

Ann M. Johnson, Lynnwood, Washington, for appellees Jeffrey's Restaurant, et al.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

MATTHEWS, Chief Justice.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In this case, George Bibo, a minority stockholder of Alaska Pacific Properties, Inc. claims that the Johnsons, controlling shareholders of the corporation, caused the corporation to engage in various transactions which benefitted the Johnsons to the prejudice of the corporation and Bibo. Summary judgment in favor of the controlling shareholders was granted. We reverse.

George Bibo owns 25% of the stock in Alaska Pacific Properties, Inc. Members of the Johnson family, August, Miriam, and Marsha, directly or indirectly own the rest of the corporation's stock and serve as its directors.

Jeffrey's Restaurant is a partnership, two-thirds of which is directly or indirectly owned or controlled by the Johnson family. Bibo is not a partner in Jeffrey's.

Bibo's second amended complaint contained nine claims for relief. All were dismissed on summary judgment. On appeal, he contends that three of them should not have been dismissed. The material allegations of these claims are as follows.

### A. *Lease Amendment*

On January 9, 1980, Alaska Pacific leased from Jeffrey's Restaurant certain premises at Jeffrey's Restaurant, namely a dining room consisting of 1,184 square feet, a new addition consisting of 2,106 square feet, and the basement below the new addition consisting of approximately 760 square feet. The term of the lease was fifteen years with an option to renew for an additional 15 years. Alaska Pacific operated a bar known as the Backdoor Lounge in the new addition and sold liquor in the dining room portion of the leased premises.

On March 5, 1985, the lease was amended, deleting the dining room from the lease. The only consideration for this was an unspecified decrease in the lease payments for the second fifteen year term, should the option to renew be exercised. The lease amendment was allegedly accomplished without the knowledge or consent of Bibo and was allegedly for the personal gain of the Johnsons and contrary to the interests of Bibo and Alaska Pacific, in breach of the Johnsons' fiduciary duty to Bibo and Alaska Pacific.

### B. *Excessive Compensation—Marsha Johnson*

It is alleged that Marsha Johnson was paid an excessive salary for co-managing the Backdoor Lounge in disregard of Alaska Pacific's and Bibo's interests.

### C. *Excessive Compensation—Allied Business Services*

It is alleged that Allied Business Services was paid excessive fees for keeping Alaska Pacific's books. The Johnsons own 75% of the stock of Allied Business Services [1] and thus benefitted from the excessive fees which were contrary to the interests of Bibo and Alaska Pacific.

The relief sought by Bibo on these claims included a damage award to Alaska Pacific, a determination that the benefits bestowed, directly or indirectly, on the members of the Johnson family were dividends and that Bibo is therefore entitled to a proportionate share, and a court ordered buy-out of Bibo's stock at a fair price.

## II. SUMMARY JUDGMENT GROUNDS

The court did not not specify on what basis it granted summary judgment in favor of appellees. In such circumstances "it is presumed that the court ruled in the movant's favor on all the grounds stated." *State v. Appleton & Cox of California, Inc.*, 703 P.2d 413, 414 (Alaska 1985). Thus, the summary judgment can be reversed only if none of the grounds advanced supports the trial court's decision. *Id.* The grounds for the motion were:

A. As to the lease amendment claim: The original lease was a sham in that it did not bind Jeffrey's to permit liquor service in the dining room for the term of the lease. "The sole purpose of the 'lease' was to define for the ABC Board the boundaries to which the liquor license would apply. It was not intended to define the legal relationship between the parties who signed it."

B. As to excessive compensation paid Marsha Johnson and Allied Business Services more than two years before the complaint was filed, that is, before September 20, 1983: The two-year statute of limita-

---

**1.** The other 25% is owned by Karen Meadows who is secretary of Alaska Pacific Properties, but evidently not a director or shareholder of Alaska Pacific.

tions expressed in AS 09.10.070 bars these claims.

C. As to all equitable claims: Bibo participated or acquiesced in the acts complained of and waited too long before bringing suit. His suit is thus barred by the doctrines of estoppel and laches.

## III. DISCUSSION

### A. *Laches and Estoppel*

 We turn first to the claim that Bibo's claims in equity are barred by laches and equitable estoppel. Laches is an equitable defense arising from a plaintiff's unreasonable delay in bringing suit which prejudices the defendant. *Wolff v. Arctic Bowl, Inc.*, 560 P.2d 758, 767 (Alaska 1977). Equitable estoppel results from an assertion of a position, expressly or by implication, which is reasonably relied on by the opposing party to his detriment. *Merdes v. Underwood*, 742 P.2d 245, 248 (Alaska 1987). The doctrines are intertwined in the present case as it is contended that Bibo implicitly approved of the questioned transactions by not challenging them and that he waited too long to sue.

#### 1. Excessive compensation—Allied Business Services

Concerning the question of compensation paid to Allied Business Services, the appellees contend that Bibo knew of the fee structure as early as February of 1980. He made an additional investment in Alaska Pacific in July of 1980. From February of 1980 to 1985, Bibo is said to have "grumbled" or "groused" about the fees charged. According to Bibo, he complained about the excessive fees to the president of Alaska Pacific, August Johnson, but to no avail. He filed suit on September 20, 1985.

 Bibo's complaints about the fees paid for bookkeeping negate the appellees' estoppel claim. Absent other factors,

Bibo's purchase of additional stock coupled with silence about the bookkeeping fees might amount to implicit approval of them. That, however, is not what occurred. Bibo's complaints eliminate any inference that he approved of the fees. Bibo therefore cannot be estopped, because he did not assert a position contrary to his present one. *Merdes v. Underwood*, 742 P.2d at 248.

Bibo's complaints, however, do not eliminate the defense of laches. The five year delay in bringing suit could be seen by the trial court to be unreasonable. Bibo argues that this delay was not unreasonable because appellees have not shown resulting prejudice. The only result of his delay is that the appellees have been able "to put more money in their own pockets"—an event which he says does not constitute prejudice for laches purposes.

 This delay could be seen as unreasonable when applied to Allied Business Services. Allied was not wholly owned by the Johnson family. Karen Meadows, who is not a shareholder or director of Alaska Pacific, has owned 25% of Allied since January 1, 1983. This is sufficient separateness so that the policy of laches—non-disturbance of long-standing, settled, transactions—should apply to transactions between the two corporations. However, Bibo is not asking that Allied Business Services repay the allegedly excessive fees that it has received. Instead, he wants the Johnsons to pay Alaska Pacific as damages an amount equivalent to the excessive portion of the fees, or to require the Johnsons, as directors of Alaska Pacific, to pay him as a dividend a pro rata share of the excessive portion of the fees.[2]

 The prejudice aspect of the defense of laches applies primarily where money or valuable services will be wasted as a result of the unreasonable delay, assuming the suit to be ultimately successful.[3] *E.g.,*

---

2. The dividend remedy is discussed in *Alaska Plastics, Inc. v. Coppock*, 621 P.2d 270, 277 (Alaska 1980), *citing* Note, *Executive Compensation in Close Corporations: The Need For a Modified Judicial Approach to the Reasonableness Test*, 1972 Duke L.J. 1251, 1270–74.

3. Prejudice may also be found where delay results in loss of evidence or other defense disadvantage. *Whitefield v. Anheuser Busch, Inc.*, 820 F.2d 243 (8th Cir.1987). No claim is made in this case that prejudice of this kind exists.

*City & Borough of Juneau v. Breck*, 706 P.2d 313 (Alaska 1985) (halting construction on partially complete parking garage would be undue prejudice); *Concerned Citizens of South Kenai Peninsula v. Kenai Peninsula Borough*, 527 P.2d 447 (Alaska 1974) (abandonment of hospital construction plan despite substantial expenditures would constitute undue prejudice). *Compare Moore v. State*, 553 P.2d 8 (Alaska 1976) (no undue prejudice, most expenditures were made before it was reasonable to have expected plaintiff to sue).

In the present case, no waste will occur if Bibo's suit for excessive fees to Allied Business Services is allowed to proceed and is successful. The most that can be said is that if Bibo had sued within a reasonable time after learning of the excessive fees—say six months for the purposes of discussion—the Johnsons might only be made to pay the excess for six months as damages to the corporation, rather than five years (if we assume that the practice of paying excessive fees was terminated when suit was brought).

Nonetheless, a simple damages remedy can be viewed as a prejudice to the Johnsons. Their total liability would increase with the delay, while their benefits as shareholders of Allied Business Services would increase more slowly because they do not own all of the stock of the latter corporation. It would be proper, however, to award damages equal to the amount by which the Johnsons profited by their breach of fiduciary duty. *Steelman v. Mallory*, 716 P.2d 1282, 1286 (Idaho 1986). Using this analysis, Bibo's delay would not prejudice the Johnsons in a manner which the doctrine of laches should recognize.

Focusing on the dividend remedy, the prejudice aspect of the Johnsons' laches defense looks insignificant. The objective of the dividend remedy is to give the minority shareholder, pro rata, the benefits which, in some disguised form, the majority shareholders have bestowed upon themselves. Thus, if Bibo receives a pro rata dividend from the corporation for five years of disguised benefits to the Johnsons, rather than for only six months, the prejudice to the Johnsons would, in theory at least, not be greater because of the delay. In both cases the corporation would merely issue a dividend proportionally equal to the prior disguised benefits issued to the Johnsons.

Absent a showing of specific prejudice, we conclude that laches should not bar the dividend remedy or any other remedy sought by Bibo in which the only consequence of delay has been an equal increase in detriments and benefits to the appellees.

Even as to a simple damages claim against the directors for excessive payments to Allied, a complete bar on the basis of laches is inappropriate. Each excessive payment is a separate wrongful act. As to each payment, it is correct to ask what is the last day on which a suit to seek damages for the excess could reasonably have been brought. The answer to this question is properly left to the sound discretion of the trial court. However, not all of the payments will be excluded for some of them were apparently made nearly contemporaneously with the filing of the suit.

### 2. Excessive compensation—Marsha Johnson

Most of the foregoing discussion is applicable to the claim that Marsha Johnson's compensation was excessive. The primary difference is that each allegedly excessive payment may be seen as a direct benefit to the Johnson family, if it is correct to consider the family as one economic unit. The record is silent on this. If the family is considered as a unit, then laches should not bar the damage remedy, since again the Johnsons would experience an equal increase in detriments and benefits. If not, the dividend remedy and some part of the damage remedy should not be barred for the reasons discussed above in connection with the Allied Business Services claim.

### 3. Lease amendment

No serious laches or estoppel claim is made concerning the lease amendment claim. The amendment was made May 5, 1985, less than five months before Bibo

filed suit. At some time prior to the amendment Jeffrey's Restaurant converted the dining room, in which the Backdoor Lounge had been allowed to sell liquor, into a video game room. However, the record indicates that liquor was still served there. Thus, consent to that conversion by Bibo does not carry with it implied consent to a change in which no liquor may be served.

## B. *The Sham Lease*

■ The appellees contend that the dining room was included in the leased premises on the advice of a representative of the Alcohol Beverage Control Board. It was not intended that the Backdoor Lounge would receive revenue from food sales in the dining room or that Jeffrey's Restaurant would receive revenue from liquor sales there. Clause 1d of the lease says as much.[4] There seems to be no genuine issue on this point. However, the appellees go on to argue that it was intended that dining room liquor service be permitted only on a trial basis "reserving all decision making rights ... to Jeffrey's." This contradicts the language of the lease. It is also inconsistent with the 1985 lease amendment. This amendment deleted the dining room from the lease in return for a reduction in lease rates during the second fifteen year period should the option to renew be exercised. If liquor service in the dining room area could be terminated at the will of Jeffrey's, this would not have been necessary. In our view, a genuine issue of fact exists as to whether the lease was originally intended to give Jeffrey's the unilateral right to cut off liquor services in the dining area.

## C. *Excessive Compensation—Two-Year Statute of Limitations*

Appellees argued in the trial court that the two-year statute of limitations contained in AS 09.10.070[5] barred Bibo's claims for excessive compensation paid prior to two years before commencement of this action, that is prior to September 20, 1983. Bibo argues that this statute does not apply to his claims. He contends, first, that AS 09.10.100,[6] which provides a ten-year period of limitations for actions "not otherwise provided for," governs here. Bibo also argues, in the alternative, that his claims are founded on an implied contract between the Johnsons, as directors, and the corporation and thus the six-year statute, AS 09.10.050,[7] applicable to implied contracts should govern.[8] We find this argument persuasive.

■ Directors of corporations are fiduciaries with respect to the corporation. *Wolff v. Arctic Bowl, Inc.*, 560 P.2d 758, 767 (Alaska 1977). The assumption of the fiduciary duties of directorship in any corporation constitutes an agreement to honestly and diligently direct the business of the corporation. In *Hughes v. Reed*, 46 F.2d 435, 440 (10th Cir.1931) the court held that a corporation's action against directors for breach of their duties as such was an action for implied contract governed by the statute of limitations pertaining to implied contract, rather than a statute referring to actions for injury to the rights of another. *See also Wallace v. Lincoln Sav. Bank*, 89 Tenn. 630, 15 S.W. 448, 453 (1891).

■ There is also authority holding that an action against corporate directors falls within the "tort" statute. *See, e.g., Stewart Coach Indus., Inc. v. Moore*, 512

---

4. Clause 1d states: "Any food sales made in the wet areas will be written upon Jeffrey's guest receipts, and will be kept entirely separate from any alcoholic beverage sales. No sales made by the Back Door Lounge are to be written upon Jeffrey's guest checks."

5. Alaska Statute 09.10.070 provides, in relevant part: "No person may bring an action (1) for ... any injury to the person or rights of another not arising on contract and not specifically provided otherwise ... unless commenced within two years."

6. Alaska Statute 09.10.100 provides: "An action for a cause not otherwise provided for may be commenced within 10 years after the cause of action has accrued."

7. Alaska Statute 09.10.050 provides, in relevant part: "No person may bring an action (1) upon a contract or liability, express or implied, ... unless commenced within six years."

8. Appellees have not addressed the statute of limitations issue in their appellate brief.

F.Supp. 879 (S.D. Ohio 1981); *Sabre Farms, Inc. v. Jordan,* 78 Or.App. 323, 717 P.2d 156 (1986). We decline to follow these cases because of the preference given to the longer period of limitations when two periods reasonably may apply. *Jenkins v. Daniels,* 751 P.2d 19, 22 n. 6 (Alaska 1988); *Safeco Ins. Co. v. Honeywell,* 639 P.2d 996, 1001 (Alaska 1981). Actions against corporate directors for breach of fiduciary duty sound in contract, and are governed by the six-year statute. The two-year statute will not support the grant of summary judgment in this case.[9]

The judgment is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.

---

**9.** In *Blake v. Gilbert,* 702 P.2d 631, 638 n. 15 (Alaska 1985) we stated, without explanation, that an action by the assignee of a corporation against a former director of the corporation for breach of his fiduciary duties would be governed by the ten-year statute. The above analysis conflicts with the dictum in *Blake,* which is hereby overruled.