Patricia SHIELDS, Kristy Shields, and Thomas Martinez, Jr., Appellants,

v.

CAPE FOX CORPORATION, an Alaskan corporation, and the Board of Directors of Cape Fox Corporation, Appellees.

No. S–9134.

Supreme Court of Alaska.

March 8, 2002.

---

David W. Rosendin, P.C., Ketchikan, for Appellants.

Frank A. Pfiffner, Hughes, Thorsness, Powell, Huddleston & Bauman, LLC, Anchorage, and James D. Nelson, Betts, Patterson & Mines, P.S., Seattle, for Appellees.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

MATTHEWS, Justice.

Cape Fox Corporation recovered a judgment against Kristy Shields, Patricia Shields, and Thomas Martinez, Jr., arising out of losses incurred by a store owned by Cape Fox during 1995 and 1996. The main question presented in this appeal is whether the trial court committed plain error in failing to instruct the jury to determine Cape Fox's comparative fault in causing the losses. Because there was evidence of comparative fault, comparative fault was pled and argued, each of Cape Fox's claims was at least partly

negligence-based, and the applicable statute clearly requires a comparative fault instruction, we conclude that the trial court committed plain error.

## I. FACTS AND PROCEEDINGS

Cape Fox Corporation is the village corporation for Saxman. It owns a number of businesses, including The Village Store, a gift shop that primarily sells items to tourists. The Village Store incurred losses in 1995 and 1996, although it was profitable in other years of operation. Patricia Shields managed the store from 1993 through 1996; in 1995 and 1996 her management became more autonomous. Kristy Shields, Patricia's teenaged daughter, worked at The Village Store during 1995–1996. Thomas Martinez, Patricia's brother-in-law, was a director of Cape Fox until he was removed as a result of this case. He was also chairman of the board until the summer of 1996.

Cape Fox sued the defendants for the store's losses.[1] It presented claims of negligence and conversion against each of the three and a claim of breach of fiduciary duty against Martinez. It sought punitive damages against Patricia and Martinez. Cape Fox also sought the removal of Martinez from the board and a decree barring him for life from serving on the board. They based this request upon allegations of Martinez's "fraudulent or dishonest acts" and gross misconduct.

During discovery, the defendants failed to appear for scheduled depositions. The trial court thus entered discovery sanctions precluding them from testifying. At trial, however, the court permitted Patricia to call Martinez as a witness. Otherwise, the sanctions were enforced.

After a four-day trial the jury returned a special verdict in favor of Cape Fox on all counts. The jury awarded the following amounts against each defendant on the claims presented:

Kristy Shields
 Conversion $10,000.00

---

1. Cape Fox also presented a claim that Martinez had charged unauthorized travel expenses of some $3500 to the corporation.

| | |
|---|---|
| Negligence | $10,000.00 |

Patricia Shields
| | |
|---|---|
| Conversion | $201,727.08 |
| Negligence | $352,440.08 |
| Punitive Damages | $125,000.00 |

Thomas Martinez
| | |
|---|---|
| Conversion | $206,427.08 |
| Negligence | $321,427.08 |
| Breach of Fiduciary Duty | $206,427.08 |
| Punitive Damages | $175,000.00 |

The jury also determined that Martinez should be removed from the board of directors and barred for fifteen years from serving as a director.

Following receipt of the verdict, the court entered an award of attorney's fees and costs against the defendants. The court also limited the compensatory damages awarded against Patricia for her negligence and conversion to the jury's determination of damages owing to her negligence alone, $352,440.08. Similarly with respect to Martinez, the court limited damages against him for conversion and breach of fiduciary duty to the jury's determination of damages owing to his negligence, $321,427.08. Finally, treating the jury's special verdict on the removal and bar of Martinez as advisory, the court entered an order removing Martinez from

the board and barring him from service on the board for fifteen years.

The defendants now raise a variety of challenges to the trial court's judgment.

## II. DISCUSSION

### A. Did the Court Err in Failing to Appoint a Guardian ad Litem for Kristy?

Patricia, without counsel, filed an answer on Kristy's behalf as her "next friend." Defendants contend that the judgment against Kristy is void because she was a minor when she was sued and the absence of a court-approved guardian ad litem makes any judgment against a minor void. Further, they contend that the fact that Kristy had reached the age of majority by the time of the trial does not mean that the judgment is valid, because she was a minor at "critical pretrial stages."

Alaska Civil Rule 17(c) governs this issue.[2] The second sentence of this rule makes clear that while a "next friend" may sue on behalf of a minor, she may not defend a suit against a minor. Further, a next friend cannot generally represent a minor, even as a plaintiff, without counsel.[3]

2. Civil Rule 17(c) provides:
Whenever an infant or incompetent person has a representative, such as a general guardian, committee, conservator, or other like fiduciary, the representative may sue or defend on behalf of the infant or incompetent person. An infant or incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem. The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person.

3. The Ninth Circuit Court of Appeals addressed this issue in *Johns v. County of San Diego*. The court stated:
While we have not addressed the question of whether a guardian ad litem can represent a child without retaining a lawyer, all other circuit courts addressing the issue have held that the guardian or parent cannot bring a lawsuit on behalf of a minor in federal court without retaining a lawyer. *See, e.g., Osei–Afriyie v. Medical College*, 937 F.2d 876, 882–83 (3d Cir. 1991); *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61–62 (2d Cir.1990);

*Meeker v. Kercher*, 782 F.2d 153, 154 (10th Cir.1986) (per curiam). The Third Circuit explained the rationale:
A litigant in federal court has a right to act as his or her own counsel. See 28 U.S.C. § 1654 (1982).... However, we agree with *Meeker v. Kercher*, 782 F.2d 153, 154 (10th Cir.1986) (per curiam), that a non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child. The choice to appear pro se is not a true choice for minors who under state law, see Fed.R.Civ.P. 1(b), cannot determine their own legal actions. There is thus no individual choice to proceed pro se for courts to respect, and the sole policy at stake concerns the exclusion of non-licensed persons to appear as attorneys on behalf of others.
It goes without saying that it is not in the interest of minors or incompetents that they be represented by non-attorneys. Where they have claims that require adjudication, they are entitled to trained legal assistance so their rights may be fully protected. *Osei–Afriyie*, 937 F.2d at 882–83 (quoting *Cheung*, 906 F.2d at 61).
We agree with this reasoning. In addition, we are bound by our general holding in *C.E.*

As noted, Patricia, acting pro se, filed an answer for Kristy as Kristy's "next friend." Thus Kristy was not properly represented and the trial court should have appointed a guardian ad litem or entered some other appropriate protective order on Kristy's behalf pursuant to Civil Rule 17(c).

■ However, this error does not require reversal in this case because Kristy turned eighteen almost a year before trial. She became an adult after the case was filed but before any events had occurred in pretrial practice that might prejudice her interests. Once she became an adult she was, in the eyes of the law, competent to represent herself and was no longer entitled to protection under the rule.[4] Absent a showing of prejudice resulting from her lack of representation or protection before she turned eighteen, the error was harmless.[5]

### B. Did the Court Err When it Failed to Instruct on the Comparative Fault of Cape Fox?

■ The defendants argue that a comparative fault instruction should have been given. But they did not propose a comparative fault instruction or object to the court's failure to give one. Civil Rule 51(a)[6] therefore applies, and this argument must be reviewed under the stringent plain error standard.[7]

■ Plain error exists where there is an obvious mistake that creates "a high likelihood that the jury will follow an erroneous theory resulting in a miscarriage of justice."[8] This standard imposes a heavy burden on appellants to show that an error was both obvious and very likely consequential.[9] We believe that there was plain error in this case.

■ Alaska Statute 09.17.080(a) requires trial courts to instruct on comparative fault in all cases involving the fault of more than one person unless the parties agree that there should be no such instruction. This requirement is expressed in clear and mandatory terms: "In all actions involving fault of more than one person, including third-party defendants and persons who have settled or otherwise been released, *the court,* unless otherwise agreed by all parties, *shall*

---

*Pope* that a non-lawyer "has no authority to appear as an attorney for others than himself." *C.E. Pope,* 818 F.2d at 697. The issue of whether a parent can bring a pro se lawsuit on behalf of a minor "falls squarely within the ambit of the principles that militate against allowing non-lawyers to represent others in court." *Brown v. Ortho Diagnostic Sys., Inc.,* 868 F.Supp. 168, 172 (E.D.Va.1994). Accordingly, we hold that a parent or guardian cannot bring an action on behalf of a minor child without retaining a lawyer. 114 F.3d 874, 876–77 (9th Cir.1997).

4. *See Wagnon v. Gaines,* 526 P.2d 500, 501 (Okla. App.1974).

5. Civil Rule 61 provides in relevant part:
 No error ... in anything done or omitted by the court or by any of the parties is ground for granting a new trial ... unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

6. Civil Rule 51(a) provides:
 At the close of the evidence or at such earlier time as the court reasonably directs, any party may file written requests that the court give the jury specific instructions. The court shall inform counsel of the final form of jury instruc-

tions prior to their arguments to the jury. Following the close of the evidence, before or after the arguments of counsel, the court shall instruct the jury. Additionally, the court may give the jury such instructions as it deems necessary at any stage of the trial. No party may assign as error the giving or the failure to give an instruction unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds of the objection. Opportunity must be given to make the objection out of the hearing of the jury, by excusing the jury or hearing objections in chambers.

7. *See Manes v. Coats,* 941 P.2d 120, 125 (Alaska 1997).

8. *Alaska Marine Pilots v. Hendsch,* 950 P.2d 98, 110 (Alaska 1997); *see also Merrill v. Faltin,* 430 P.2d 913, 917 (Alaska 1967) ("We have held that we shall not pass upon an assertion that the giving of an instruction was error where the matter had not been properly brought to the attention of the trial court. But we have also held that we shall consider plain errors, even though not objected to below, which are so substantial as to result in injustice.").

9. *See Alaska Marine Pilots,* 950 P.2d at 110.

*instruct the jury* to answer special interrogatories...." (Emphasis added.)

Here, Patricia and Kristy pled comparative fault as an affirmative defense. Martinez, answering pro per, did not plead comparative fault as an affirmative defense, but he did interpose it as a counterclaim for damages. Further, Martinez, who was subsequently represented by counsel, made Cape Fox's comparative fault the centerpiece of his trial brief. There was no express agreement by the Shields or Martinez not to instruct on the subject of comparative fault. Thus the failure to instruct on comparative fault was error sufficiently obvious to meet the "obvious mistake" component of the plain error doctrine.

The defendants at the trial stressed the responsibility of Cape Fox Corporation for the losses during 1995 and 1996 at The Village Store. They argued that Patricia did not receive adequate administrative support, training, or equipment maintenance. They contended that Cape Fox administrative personnel were aware of the problems she was having and of the practices that she had permitted. Defendants argued that Cape Fox personnel negligently failed to act in response to this knowledge. Furthermore, Martinez argued that the Cape Fox board concurred with his acts which allegedly facilitated Patricia's mismanagement and wrongful conduct. The defendants developed evidence on these points and emphasized them in their final arguments.

In our view, if the jury had been properly instructed on the subject of comparative fault, Cape Fox would probably have been made to bear some significant responsibility for the 1995 and 1996 losses. Therefore, we conclude that the "likelihood of harm" component of the plain error standard has also been met. We thus find that the court committed plain error when it failed to give a comparative fault instruction.

This conclusion applies to the negligence claims against all defendants. The defendants argue that it must apply also to the conversion claims. They correctly point out that the pre–1997 version of AS 09.17.900, which governs this case, included within the concept of "fault" all tortious acts except those where the defendant acted with the intent to cause the resultant harm.[10] Defendants also note that the jury instruction on conversion did not require an intent on their part to deprive Cape Fox of the benefits of ownership of the items allegedly converted.[11] Instead, the court required "an intentional exercise of dominion or control over property or money which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the property or money." According to that instruction, a store manager such as Patricia, who intentionally exercises control over store property, might be liable for losses resulting from negligent acts in connection with such control. Thus, the fault giving rise to liability for conversion could be mere negligence. Accordingly, "fault" as defined by the court's conversion instruction falls within the ambit of AS 09.17.900, and the court should have instructed the jury on comparative negligence with regard to these claims.[12]

---

**10.** *See Borg–Warner Corp. v. Avco Corp. (Lycoming Div.)*, 850 P.2d 628 (Alaska 1993).

**11.** The conversion instruction given by the court provided as follows:

> INSTRUCTION NO. 13
>
> Plaintiff Cape Fox Corporation claims that each of the defendants converted property or money from the corporation and wants compensation for the fair value of the losses resulting from the conversion.
>
> Conversion is an intentional exercise of dominion or control over property or money which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the property or money.

> In order to find that plaintiff Cape Fox Corporation is entitled to recover on this claim, you must decide that it is more likely true than not true that:
>
> 1. Defendants Patricia Shields, Thomas Martinez, Jr., and/or Kristy Shields converted property or money from plaintiff Cape Fox Corporation; and
> 2. The fair value of the losses resulting from the conversion.

**12.** By contrast, the Alaska Pattern Civil Jury Instructions (1990 revisions) concerning conversion require an "intentional act" on the part of the defendant damaging or interfering with the plaintiff's right to possess property. Pattern Instruction 18.02. Instruction 18.03 defines "in-

What remains is the question whether a comparative fault instruction should have encompassed the claim against Martinez for breach of his fiduciary duties. The court's instruction on this theory of liability maintained that a director such as Martinez has the duty to "honestly and diligently direct the business of the corporation."[13] Cape Fox argues that actions against corporate directors for breach of fiduciary duty are contract actions and that comparative fault principles should not apply to them. In support of this proposition Cape Fox cites *Bibo v. Jeffrey's Restaurant.*[14] There the question was which of two possible statutes of limitations applied to a claim against corporate directors for breach of their fiduciary obligations. The choices were the six-year period applicable to implied contracts or the two-year period applicable to torts. We recognized that there was authority supporting both choices and decided that such actions should be governed by the implied contract statute of limitations "because of the preference given to the longer period of limitations when two periods reasonably may apply."[15]

This aspect of *Bibo* was discussed in *Lee Houston & Associates, Ltd. v. Racine.*[16]

There we compared *Bibo*—involving claims that directors had breached their fiduciary duties—to *Van Horn Lodge, Inc. v. White,*[17] a case involving a claim of professional malpractice against an attorney. In *Van Horn Lodge* we held that the malpractice claim fell within the two-year period of limitations established by the tort statute. In *Lee Houston* we found the two cases difficult to reconcile. In each case the duty that was allegedly breached was imposed by law rather than by an explicit promise. We observed that in these circumstances the claims "may be reasonably be said to arise either in tort or in contract."[18] We referred to such actions as "hybrid" actions and held that they would be governed by the longer implied contract statute of limitations, while leaving open the possibility that they might be considered tort actions for purposes of determining the availability of punitive damages.[19]

Subsequently, in *Breck v. Moore*[20] we were presented with a professional malpractice action against an attorney and a title company involving an "alleged breach of a duty of due care which was implied by law as a result of a contractual undertaking."[21] Referring to

---

tentional act" as encompassing either an intent "to interfere with the property" or knowledge on the part of the defendant to a substantial certainty "that the act or omission would result in such interference." Even as so defined, conversion sometimes may be negligent in character, for the second sentence of Pattern Instruction 18.03 indicates that a mistaken belief on the part of a defendant that he or she had a right to interfere with the property does not negate intentionality.

13. The fiduciary duty instruction provided as follows:

INSTRUCTION NO. 14

Plaintiff Cape Fox Corporation claims that as a director of Cape Fox Corporation defendant Thomas Martinez, Jr. breached fiduciary duties that he owed to the corporation and wants compensation from defendant Thomas Martinez, Jr. for the harm resulting from the breach of fiduciary duties.

A director is a fiduciary to the corporation. Directors are entrusted with the management of the corporation's business and property for the benefit of all the shareholders. As such, directors occupy the position of trustees for the collective body of shareholders. This fiduciary duty constitutes an agreement to "honestly and diligently direct the business of the corporation."

In order to find that plaintiff Cape Fox Corporation is entitled to recover on this claim, you must decide that it is more likely true than not true that:

1. Defendant Thomas Martinez, Jr. breached fiduciary duties that he owed to plaintiff Cape Fox Corporation;

2. The breach of fiduciary duties by defendant Thomas Martinez, Jr. was a legal cause of harm to plaintiff Cape Fox Corporation; and

3. Plaintiff Cape Fox corporation was actually harmed.

14. 770 P.2d 290, 295 (Alaska 1989).

15. *Id.* at 296.

16. 806 P.2d 848, 853–54 (Alaska 1991).

17. 627 P.2d 641 (Alaska 1981).

18. *Lee Houston,* 806 P.2d at 853–54.

19. *Id.* at 854–55.

20. 910 P.2d 599 (Alaska 1996).

21. *Id.* at 603.

the "hybrid" nature of such actions, we held that the implied contract statute of limitations should be applied, but that a tort rather than a contract measure of damages should be used.[22]

Cape Fox's breach of fiduciary duty claim against Martinez is a hybrid claim. Like the claims involved in the foregoing cases, the fiduciary duty claim is based on a duty implied by law as a result of a contractual undertaking. Insofar as the duty requires due diligence it is merely a particular application of a negligence standard. To say that this claim should not be subject to a comparative fault instruction would be to elevate form over substance. As we said in *Lee Houston*, "[t]his court should avoid applications of the law which lead to different substantive results based upon distinctions having their source solely in the niceties of pleading and not in the underlying realities." [23]

■■ Cape Fox advances another reason why it was not plain error not to give a comparative fault instruction. Cape Fox contends that fault should not be allocated in situations involving solely economic loss. It bases this argument on the definition of "fault" set out in AS 09.17.900: "In this chapter, 'fault' includes acts or omissions that are in any measure negligent, reckless, or intentional toward the *person or property* of the actor or others. . . ." Cape Fox notes that this language was taken from the Uniform Comparative Fault Act of 1977 and that the comment to the act indicates that fault is not intended to be allocated in situations involving economic loss. The commissioner's comment to section 1 of the Uniform Comparative Fault Act states:

> The specific application of that principle, as provided for in this Act, is confined to physical harm to person or property. But it necessarily includes consequential damages deriving from the physical harm, such as doctor's bills, loss of wages or costs of

repair or replacement of property. It does not include matters like economic loss resulting from a tort such as negligent misrepresentation, or interference with contractual relations or injurious falsehood, or harm to reputation resulting from defamation. But failure to include these harms specifically in the act is not intended to preclude application of the general principle to them if a court determines that the common law of the state would make the application.

A number of jurisdictions have been presented with the question of whether cases involving only economic loss should be subject to comparative negligence principles.[24] The prevailing view is that comparative negligence does apply in such cases.[25] But we need not resolve this controversy in the present case for this not a case involving only economic loss. Cape Fox's claim for conversion was necessarily a claim for tangible property loss. Where substantial claims for tangible property loss are combined with claims for economic loss, it would be confusing and unduly complex to apply a rule of comparative fault to the former, but not to the latter. Cape Fox does not advocate that such a course should be followed, and we are aware of no authority that so holds.

In summary, we conclude that it was plain error not to give a comparative fault instruction and that such an instruction should have been given encompassing all of Cape Fox's claims for compensatory damages against each defendant.

### C. Did the Court Err When it Instructed the Jury that Patricia Shields and Kristy Shields Could Be Liable for Failing to Exercise Ordinary Care in the Work They Were Hired to Perform for Cape Fox?

■■ The court instructed the jury that Patricia and Kristy had a duty to exercise

---

22. *Id.* at 604.

23. *Lee Houston,* 806 P.2d at 853 (quoting *Higa v. Mirikitani,* 55 Haw. 167, 517 P.2d 1, 4–5 (1973)).

24. *See* Sonja Larsen, J.D., Annotation, *Applicability of Comparative Negligence Doctrine to Ac-*

*tions Based on Negligent Misrepresentation,* 22 A.L.R. 5th 464 (1994).

25. *Id.* at § 2. There are also contrary authorities. *Id.* at § 4.

reasonable skill and ordinary care and diligence in the work they were hired to perform.[26] The defendants claim that this instruction was erroneous, arguing that there is no tort of negligent job performance. They contend that in case of poor job performance, "[t]he employer's remedy is to fire the employee for ineptness or lack of diligence."

Since defendants failed to raise this issue below and did not object to Instruction No. 12, we review this issue only for plain error. The focus of their argument is on the case of *Brown v. United Cerebral Palsy/Atlantic & Cape May, Inc.*[27] In that case the court indicated that ordinary negligence would apply to nondiscretionary acts of employees such as those resulting in shortages in a cash drawer, but not to acts of bad management causing a loss of profits.[28]

Cape Fox responds that *Brown* represents a distinct minority view and that the RESTATEMENT (SECOND) OF AGENCY § 379(1) (1958), expresses the more general rule that "[u]nless otherwise agreed, a paid agent is subject to a duty to the principal to act with standard care and with the skill which is standard in the locality for the kind of work which he is employed to perform...."

We agree with Cape Fox that the general rule is that expressed by § 379(1) of the RESTATEMENT (SECOND) OF AGENCY,[29] and that it was not plain error to give Instruction No. 12.

### D. Did the Court Err When it Failed to Instruct that Martinez's Liability Was Limited by the Business Judgment Rule?

 Defendants contend that Jury Instruction Nos. 14 and 15 concerning Martinez's liability as a director of the corporation were plain error [30] because they did not reflect the business judgment rule. The business judgment rule is set out in AS 10.06.450(b).[31] It requires a director to use

---

26. Instruction No. 12 provides:

> Plaintiff Cape Fox Corporation claims that it was harmed because of the failure of defendants Patricia Shields and Kristy Shields to exercise reasonable skill and ordinary care and diligence in the work they were hired to perform for plaintiff Cape Fox Corporation and wants compensation from defendants Patricia Shields and Kristy Shields for the harm.
>
> Employees have the duty to exercise reasonable skill and ordinary care and diligence in the work they were hired to perform.
>
> In order to find that plaintiff Cape Fox Corporation is entitled to recover on this claim, you must decide that it is more likely true than not true that:
>
> 1. Defendants Patricia Shields and/or Kristy Shields failed to exercise reasonable skill and ordinary care and diligence in the work they were hired to perform for plaintiff Cape Fox Corporation;
>
> 2. The failure to exercise reasonable skill and ordinary care and diligence was a legal cause of harm to plaintiff Cape Fox Corporation; and
>
> 3. Plaintiff Cape Fox Corporation was actually harmed.

27. 278 N.J.Super. 208, 650 A.2d 848 (Law.Div. 1994).

28. *Id.* at 852. *Brown*, if followed, therefore would have no effect on Kristy's liability for she was not a manager, but it could affect Patricia's liability.

29. Still, the matter is not free from doubt. For example, the commentary to § 379(1) of the RESTATEMENT (SECOND) OF AGENCY (1958) does not necessarily encompass lost profits liability. It states:

> The negligence for which an agent is subject to liability to the principal may consist of misconduct in negotiations with third persons, of conduct causing harm to the principal's tangible things in his custody, or of conduct causing the principal to be subject to liability for a tort, crime, or breach of contract.

30. These instructions were also not objected to at trial.

31. AS 10.06.450(b) provides:

> A director shall perform the duties of a director, including duties as a member of a committee of the board on which the director may serve, in good faith, in a manner the director reasonably believes to be in the best interests of the corporation, and with the care, including reasonable inquiry, that an ordinarily prudent person in a like position would use under similar circumstances. Except as provided in (c) of this section, a director is entitled to rely on information, opinions, reports or statements, including financial statements and other financial data, in each case prepared or presented by
>
> (1) one or more officers or employees of the corporation whom the director reasonably believes to be reliable and competent in the matters presented;
>
> (2) counsel, public accountants, or other persons as to matters that the director reason-

"the care ... that an ordinarily prudent person in a like position would use under similar circumstances." As such, liability under the business judgment rule does not differ appreciably from negligence liability—the standard used in Instructions Nos. 14 and 15.[32] Thus it was not plain error to fail to instruct on the business judgment rule.

### E. Were the Court's Findings Removing Martinez and Barring Him from Serving as an Officer and Director Adequate?

■ Defendants contend that the entire case was equitable rather than legal in nature, that certain equitable defenses therefore should have been allowed, that findings of fact and conclusions of law on all issues were required, and that no punitive damages could be awarded. This global contention is without merit. All of Cape Fox's damage claims were legal rather than equitable in nature.[33] Cape Fox did, however, seek equitable relief insofar as it sought the removal of Martinez from the board of directors and a ban on his future service. The court treated the special verdict on this subject as advisory only and subsequently entered the following statement as a part of the final judgment:

It is further ORDERED, ADJUDGED AND DECREED that Defendant Thomas Martinez, Jr. engaged in fraudulent or dishonest acts, gross neglect of duty and gross abuse of authority or discretion with regard to Plaintiff Cape Fox Corporation and, pursuant to AS 10.06.463, is hereby removed from office as a director of Plaintiff Cape Fox Corporation. It is further

ORDERED, ADJUDGED AND DECREED that for the reasons noted in the preceding paragraph, Defendant Thomas Martinez, Jr. is barred from office as a director of Plaintiff Cape Fox Corporation for a period of fifteen (15) years commencing from January 13, 1999.

Martinez contends that the above statement is merely conclusory and does not satisfy the findings requirement of Civil Rule 52(a).[34] We agree. The statement does not explain in what respects Martinez committed the wrongs he is found to have committed. Without detailing the particulars of his misconduct, the trial court's judgment does not satisfy Rule 52(a)'s findings requirement.[35] We therefore remand for further findings.

## III. CONCLUSION

■ Because the court committed plain error in failing to instruct the jury on comparative fault, a new trial as to the comparative fault of the parties and compensatory damages is required. Because comparative fault is relevant to punitive damages, a new trial as to Cape Fox's entitlement to punitive damages and the amount of punitive damages is also required.

Because the court did not make adequate findings concerning the removal and ban from service of Martinez as an officer and director of Cape Fox, this aspect of the trial court's judgment is vacated. On remand, the court should make and enter findings specifying the particular conduct of Martinez upon which the relief granted is based.[36] The

---

ably believes to be within the person's professional or expert competence; or

(3) a committee of the board upon which the director does not serve, designated in accordance with a provision of the articles or the bylaws, as to matters within the authority of the committee if the director reasonably believes the committee to merit confidence.

**32.** AS 10.06.210(1)(N) provides that the articles of incorporation can restrict the liability of a director generally to acts that are not in good faith or involve intentional misconduct. Martinez did not contend that the articles of incorporation of Cape Fox contain such a provision.

**33.** *See Vinson v. Hamilton,* 854 P.2d 733, 737 (Alaska 1993) (money damage claims are legal in nature).

**34.** The first sentence of Civil Rule 52(a) provides:

In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and judgment shall be entered pursuant to Rule 58; and in granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action.

**35.** *See Borchgrevink v. Borchgrevink,* 941 P.2d 132, 139 (Alaska 1997).

**36.** The appellants have made a number of additional claims of error. They have been considered and found to be either without merit or moot in view of our decision in this case.

award of costs and fees to Cape Fox must also be vacated since the judgment on which it is based has been reversed.

VACATED, REVERSED, and REMAND-ED.