Thomas MARTINEZ, Appellant,

v.

CAPE FOX CORPORATION, an Alaska Corporation, and the Board of Directors of Cape Fox Corporation, Appellees.

No. S–11197.

Supreme Court of Alaska.

June 10, 2005.

David W. Rosendin, David W. Rosendin, P.C., Ketchikan, for Appellant.

Frank A. Pfiffner, Hughes Thorsness Powell Huddleston & Bauman LLC, Anchorage, and James D. Nelson, Betts, Patterson & Mines, P.S., Seattle, WA, for Appellees.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

FABE, Justice.

## I. INTRODUCTION

This appeal challenges a superior court order imposing a permanent bar from reelection on a former corporate director who was found to have engaged in misconduct. The barred director argues principally that the superior court was not authorized under AS 10.06.463 to bar him from reelection because he was no longer a director at the time of the judgment and that the court's findings were inadequate to support a lifetime ban. He also argues that he is entitled to partial indemnification of his defense expenses. We conclude that the superior court had the

authority to impose a ban under the statute but that the court's findings do not support the lifetime ban imposed by the court and remand for entry of the fifteen-year ban imposed after a prior trial. We also articulate seven factors that should be considered by courts in future cases in deciding whether to bar a director from board service under AS 10.06.463. Finally, we hold that the appellant was not entitled to partial indemnification of his legal expenses.

## II. FACTS AND PROCEEDINGS

Cape Fox Corporation (Cape Fox) is an Alaska native corporation based in Saxman. Cape Fox owned a gift shop known as "The Village Store," which was managed by Patricia Shields, the sister of appellant Thomas Martinez. In 1996 the then Chief Executive Officer of Cape Fox, Douglas Campbell, asked an internal auditor to review the operations of The Village Store, which was experiencing financial losses. In February 1997 the auditor completed a partial audit and delivered a preliminary report to the Audit Committee of the Cape Fox Board of Directors. The auditor discovered that a significant amount of store inventory and cash was missing and concluded that theft had occurred. The board of directors asked the auditor to conduct a thorough audit, which began in March 1997. The audit revealed that $56,760.85 in inventory and $3,426.18 in cash were missing. The audit also disclosed "a pattern of short, late, or missing cash deposits from The Village Store, improperly handled credit card transactions, and an unusually large number of voided sales." The auditor discovered that store employees, including manager Patricia Shields, borrowed money from The Village Store for personal use and gave store merchandise to family and friends without paying for it.

In January 1996, during his term as chairman of the board of directors, Martinez took six jackets valued at $200 each without paying for them. In May 1997, during the investigation into misconduct at The Village Store, Martinez arranged to have $1,200 withheld from the money he received for attending director meetings to pay for the jackets.

Between February 1995 and June 1996 Martinez improperly charged Cape Fox for travel expenses. He charged meals, movies, and personal phone calls above the $60 per diem travel allowance for directors, charged Cape Fox for hotel lodging for personal travel, and took a $750 travel advance for travel expenses for which he had already been paid. After the auditor filed a report on director business expenses, Martinez authorized a deduction of $2,100 from the money he received for attending board meetings to repay Cape Fox for the improperly charged travel expenses.

The superior court found that Martinez "actively covered up the misconduct of employees at The Village Store, including the mismanagement and misconduct of his sister, Patricia Shields." Martinez also retaliated against two directors by "actively campaigning to unseat them as directors for inquiring into perceived irregularities at The Village Store and the job performance of his sister, Patricia Shields." The superior court found that Martinez "was instrumental in causing the termination of CEO Ernesta Ballard for castigating [the store's] manager, Patricia Shields." While serving as chairman of the board of directors, Martinez told Douglas Campbell, the next CEO, not to "mess around" with The Village Store upon threat of termination of his employment. Less than a week after Campbell gave Shields an unsatisfactory review, Martinez scheduled a special board meeting "to discuss problems with Doug Campbell."

On August 5, 1997, Cape Fox filed suit against Martinez and three employees of The Village Store, including Patricia Shields. On August 13, 1998, Cape Fox filed an amended complaint. The claims against Martinez included conversion, breach of fiduciary duties, and negligent mismanagement. Cape Fox also requested that Martinez be removed from office as director and be barred for life from reelection as a director of Cape Fox. Martinez's three-year term as a director expired before the trial, and he did not seek reelection. He last served on the board in September 1998.

After a trial in January 1999 the jury returned a special verdict in favor of Cape

Fox on all counts. The jury also determined that Martinez should have been removed from the board of directors and should be barred for fifteen years from serving as a director. The court treated this portion of the jury's special verdict as advisory and entered an order barring him from service on the board for fifteen years.

On appeal, we held that the trial court had erred in failing to instruct the jury on comparative fault.[1] We also determined that the superior court's conclusory statement that Martinez had "engaged in fraudulent or dishonest acts, gross neglect of duty and gross abuse of authority or discretion with regard to Plaintiff Cape Fox Corporation" did not constitute adequate findings under Civil Rule 52(a) and therefore vacated the court's order banning him from board service.[2]

The case was retried in March 2003. The jury again found for Cape Fox on all grounds,[3] and advised that Martinez should be barred for life from serving as a director of Cape Fox. On June 27, 2003, the superior court entered findings of fact and conclusions of law. The superior court found that Martinez had "committed fraudulent and dishonest acts in regard to the corporation" and had "grossly abused his authority and discretion as a director," and concluded that he should be barred for life from serving as a director of Cape Fox. The court also entered judgment against Martinez in the amount of $23,542.63.

Martinez appeals the order barring him for life from service as a director of Cape Fox. He also contends that he is entitled to partial indemnification for his defense expenses.

### III. STANDARD OF REVIEW

■■ Legal issues are subject to de novo review.[4] Because there is a range of reasonable decisions a trial judge might make in determining how long a bar from corporate board service to impose upon a defendant, this determination is reviewed for abuse of discretion.[5]

### IV. DISCUSSION

#### A. Alaska Statute 10.06.463 Authorizes the Superior Court To Bar a Former Director Who Was Not Removed from Office by the Court.

■ The superior court barred Martinez from serving as a director of Cape Fox pursuant to AS 10.06.463, which provides:

**Removal of director by superior court.** The superior court may, at the suit of the board or the shareholders holding at least 10 percent of the number of outstanding shares of any class, remove from office a director for fraudulent or dishonest acts, gross neglect of duty, or gross abuse of authority or discretion with reference to the corporation and may bar from reelection a director removed in that manner for a period prescribed by the court. The corporation shall be made a party to the suit.

Martinez argues on appeal that AS 10.06.463 applies only to current directors and does not authorize the superior court to bar a former director from future board service. Because Martinez did not raise this issue in the superior court, he must establish plain error to prevail on this issue.[6] "Plain error exists where an obvious mistake has been made which creates a high likelihood that injustice has resulted."[7]

---

1. *Shields v. Cape Fox Corp.*, 42 P.3d 1083, 1090 (Alaska 2002).

2. *Id.* at 1092.

3. The jury also found that twenty-five percent of responsibility for negligence and ten percent of responsibility for interference with the right to possess inventory and funds was attributable to Cape Fox.

4. *Turner v. Alaska Communications Sys. Long Distance, Inc.*, 78 P.3d 264, 266 (Alaska 2003).

5. *Cf. Nelson v. State*, 68 P.3d 402, 406 (Alaska App.2003) (noting that on matters involving challenges to jurors the normal standard of review is abuse of discretion "because there is generally a range of reasonable responses that a trial judge might make to a particular problem").

6. *In the Matter of L.A.M.*, 727 P.2d 1057, 1059 (Alaska 1986).

7. *Miller v. Sears*, 636 P.2d 1183, 1189 (Alaska 1981).

Martinez notes that according to the statute the superior court may remove a director for misconduct "and may bar from reelection a director removed in that manner."[8] He argues that according to the plain language of the statute the superior court may only bar from reelection a director that it has removed for misconduct under the statute. Martinez was a director at the time the complaint was filed, but was no longer a director at the time of the trial. Martinez therefore contends that AS 10.06.463 did not authorize the superior court to bar him from serving as a director because the court did not also remove him from office. Cape Fox argues that Martinez's interpretation of AS 10.06.463 would undermine the objective of the statute by permitting a dishonest director to thwart a suit to bar him by resigning from the board before trial.

▆▆▆▆ The plain language of the statute arguably suggests that the court's removal of a director is a condition for imposing a ban on his service on the board. But we have rejected the plain meaning rule;[9] "[i]n interpreting a statute, we consider its language, its purpose, and its legislative history, in an attempt to give effect to the legislature's intent, with due regard for the meaning the statutory language conveys to others."[10] The plainer the language of the statute, the more convincing the evidence of contrary legislative intent must be.[11] We "will ignore the plain meaning of an enactment ... where that meaning leads to absurd results or defeats the usefulness of the enactment."[12]

Interpreting AS 10.06.463 to permit a court to bar from reelection only directors still sitting on the board at the time the court enters judgment would defeat the statute's objective. The statute provides two forms of relief for a corporation faced with a sitting director who engages in gross misconduct: removal from office and a bar from reelection. Martinez's reading of AS 10.06.463 would deny Cape Fox the second statutory remedy of banning a dishonest director from future office simply because that director chose to leave the board before judgment was entered. Moreover, the legislative history indicates that the judicial removal statute was designed to facilitate removal of a director for serious misconduct in cases where there are insufficient shareholder votes to do so.[13] If AS 10.06.463 is read to mean that a court may not impose a future bar from service on a director who has left the board prior to judgment, directors who are sued under the statute may avoid the court's future bar from service simply by resigning from the board or declining to stand for reelection at the end of their term and then seeking reelection at a later date.

Martinez argues that once a director leaves the board, shareholder democracy is sufficient to ensure that an abusive director will not be reelected. But the premise of AS 10.06.463 is that in some situations shareholder democracy is insufficient to ensure removal or to prevent reelection of an unfit director and that therefore the court must have the power not only to remove the director but also to bar that director from reelection for a period of time. The official comment to the portion of the Model Business Corporation Act governing removal of

8. AS 10.06.463 (emphasis added).

9. *Alaska Ctr. for the Env't v. State*, 80 P.3d 231, 242–243 (Alaska 2003).

10. *Alyeska Pipeline Serv. Co. v. DeShong*, 77 P.3d 1227, 1234 (Alaska 2003) (internal quotations omitted).

11. *Hermosillo v. Hermosillo*, 962 P.2d 891, 894 (Alaska 1998).

12. *Davenport v. McGinnis*, 522 P.2d 1140, 1144 n. 15 (Alaska 1974).

13. The relevant portion of the legislative council's sectional analysis states:

Official Comment to ACC Section 10.06.463.
REMOVAL OF DIRECTOR BY SUPERIOR COURT.
SCOPE: The primary recourse for shareholders dissatisfied with the performance of a director is to seek removal under sec. 460. However, if there are insufficient votes, sec. 463 specifies the serious grounds under which holders of at least ten percent of the shares of any class or a majority of the board of directors have standing to seek removal in the superior court.
Sectional Analysis of Proposed Code Revision Bills revising the Corporations Code, House and Senate Joint Supp. No. 9 at 105, 1987 Senate–House Joint Journal Supplements.

directors by a court describes situations where shareholder removal of a director is impracticable, such as where the director charged with misconduct personally owns or controls sufficient shares to block removal, or where the director was elected by a voting group or cumulative voting and the shareholders with voting power refuse to remove the director.[14] In addition, commentators have pointed out that where a director is engaging in misconduct such as fraud that benefits the corporation, the shareholders have no incentive to remove the director.[15] These scenarios apply with equal force to the reelection of a director who leaves the board in the face of a suit under the judicial removal statute.

We therefore hold that AS 10.06.463 should be read to permit the superior court to bar a former director from reelection where that director was serving on the board when the complaint was filed.[16] The superior court did not commit plain error by barring Martinez from reelection even though it did not remove him from office.

**B. The Superior Court's Findings Support a Fifteen–Year Ban from Board Service, But Not a Lifetime Ban.**

■ Martinez argues that it was an abuse of discretion for the superior court to bar Martinez for life from service as a Cape Fox director. We agree.

■ After the first trial, the jury found that Martinez should be barred from service on the board for fifteen years. Because a bar from service under AS 10.06.463 is an equitable remedy, the superior court properly treated this portion of the jury's special verdict as advisory.[17] The superior court found that Martinez "engaged in fraudulent or dishonest acts, gross neglect of duty, and gross abuse of authority or discretion" with regard to Cape Fox and barred Martinez for fifteen years. On appeal, we held that the superior court's conclusory order regarding the ban from service did not satisfy the requirement under Civil Rule 52(a) that the trial court in actions tried without a jury or with an advisory jury make specific findings of fact and conclusions of law[18] and ordered the court to "make and enter findings specifying the particular conduct of Martinez upon which the relief granted is based."[19] We also ordered a new trial on the issues of comparative fault and damages.[20] The jury in the second trial advised that Martinez should be barred for life from the Cape Fox board. The superior court made findings of fact regarding Martinez's misconduct, and imposed a lifetime ban from board service on Martinez.

Although the superior court made detailed findings regarding the nature of Martinez's misconduct, none of those findings suggests a reason for increasing the ban from fifteen years to life following the second trial. The evidence at both trials revealed Martinez's multiple efforts to cover up his misconduct. And the superior court's findings detailed the same conduct that was described in the first trial: taking leather jackets without paying for them, improperly charging Cape Fox for travel expenses, and covering up the misconduct at The Village Store by threatening and retaliating against those who inquired about irregularities at the store. The second advisory jury's finding that Martinez should be barred for life cannot by itself justify the

---

14. Model Bus. Corp. Act § 8.09 cmt. (2002).

15. *See, e.g.,* Philip F.S. Berg, *Unfit to Serve: Permanently Barring People from Serving as Officers and Directors of Publicly Traded Companies After the Sarbanes–Oxley Act,* 56 VAND. L.REV. 1871, 1894 (2003).

16. We do not decide whether the superior court may also bar from reelection a director who, knowing that a complaint under AS 10.06.463 is likely to be filed against him, leaves the board before the complaint is filed.

17. *See Shields,* 42 P.3d at 1092; *see also* Alaska R. Civ. P. 39(c) (noting that in actions not triable of right by a jury the court may use an advisory jury).

18. Rule 52(a) states in pertinent part: "In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon. . . ."

19. *Id.*

20. *Id.*

court's decision to increase the length of the bar since it is the court, not the jury, that must determine the appropriate equitable relief.[21] Because there is no evidence in the record justifying the trial court's decision to increase the bar from the fifteen years imposed after the first trial to the lifetime bar imposed after the second trial and because the trial court's findings of wrongdoing were all matters available at the first trial when the court imposed the fifteen-year ban, we conclude that it was an abuse of discretion to increase the bar from fifteen years to life following the appeal.

Moreover, we note that increasing the length of the bar after a successful appeal without an explicit discussion of the reasons for so doing may constitute a denial of due process. In *Shagloak v. State*, we held that imposing a more severe sentence on a criminal defendant after a retrial violates the due process clause of the Alaska Constitution.[22] The United States Supreme Court has held that the federal constitution requires that whenever a sentencing judge imposes a more severe sentence on a criminal defendant after a retrial following a successful appeal, "the reasons for him doing so must affirmatively appear."[23] Although we have not considered the effect an increased penalty following retrial in a civil case would have on a civil defendant's due process rights, the same

analysis has been applied by other courts, though the interest at stake may be less important than that in criminal cases.[24] We need not decide whether the lifetime bar is constitutionally infirm because we hold that the lifetime bar is not supported by the superior court's findings.

■ We next address whether the original fifteen-year ban from service is supported by the superior court's findings. Martinez argues that before imposing a bar of any length under AS 10.06.463, the court must find that there is a "likelihood of future misconduct" if the bar is not imposed.[25] Cape Fox argues that the statute does not require such a finding.

By its terms, AS 10.06.463 does not require the court to make any specific findings prior to imposing a bar from board service beyond the finding of "fraudulent or dishonest acts, gross neglect of duty, or gross abuse of authority or discretion with reference to the corporation" required for removal of a director. The other state courts that have addressed barring a director from reelection under similar judicial removal statutes do not require that the court make a specific finding as to the likelihood of future violations, nor do they mention the defendant's likelihood of future misconduct as a factor in the decision

21. *See id.* (because ban on future board service is a form of equitable relief, jury verdict on this question is merely advisory); *see also State v. I'Anson*, 529 P.2d 188, 190 (Alaska 1974) (where an advisory jury is used, "it is entirely within the trial court's discretion to accept or reject, in whole or in part, the verdict of the advisory jury").

22. 597 P.2d 142, 145 (Alaska 1979).

23. *Alabama v. Smith*, 490 U.S. 794, 798, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 726, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)); *see also id.* at 802, 109 S.Ct. 2201 (noting that the *Pearce* rule has been limited by subsequent decisions but still applies where "the sentencing judge who presides at both trials can be expected to operate in the context of roughly the same sentencing considerations after the second trial as he does after the first").

24. *See Dan J. Sheehan Co. v. Occupational Safety & Health Review Comm'n*, 520 F.2d 1036, 1040–

41 (5th Cir.1975) (applying *Pearce* and its progeny in a case involving a civil penalty assessed by the Secretary of Labor under the Occupational Safety and Health Act); *Bezar v. De Buono*, 240 A.D.2d 978, 659 N.Y.S.2d 547, 549 (N.Y.App.Div. 1997) (declining to apply *Pearce* in civil case involving suspension of physician's license by Board for Professional Medical Conduct because the second board was composed of different individuals from the first); *Avery v. Rechter*, 71 A.D.2d 500, 423 N.Y.S.2d 514, 516 (N.Y.App.Div. 1979) ("Although the cited cases dealing with retaliatory motivation [for increased penalties following retrial] have all been criminal in nature, the theory should apply to all interest[s] protected by the due process clause.").

25. On his first appeal, Martinez argued that the fifteen-year bar was not supported by the trial court's findings. Because we decided that the superior court's findings were inadequate under Rule 52(a), we remanded for further findings without addressing whether the trial court's findings supported a fifteen-year ban from service. *See Shields*, 42 P.3d at 1092.

to impose a bar.[26]

■ Federal courts interpreting a statute that permits a court to bar a person who has committed securities fraud from serving as a director of any public company [27] have articulated a list of factors that may be considered by the trial court in making its determination.[28] These factors include: (1) the egregiousness of the underlying violation; (2) the defendant's past record of misconduct; (3) the defendant's role or position at the time of the violation; (4) the defendant's degree of scienter; (5) the defendant's economic stake in the violation; and (6) the likelihood that the misconduct will recur.[29] Martinez urges us to adopt this approach and require the trial court to make findings on these six factors before imposing a ban under AS 10.06.463.

Because AS 10.06.463 and its legislative history offer the superior court little guidance about when a ban might be appropriate, we prospectively adopt the six-factor test used by the federal courts as a list of considerations that the superior court should consider in reaching its determination. We also add a seventh factor to be considered by the superior court in deciding whether to impose a ban under AS 10.06.463: whether there is reason to suspect that shareholder democracy will be insufficient to prevent reelection of an unfit director. This may be true where, for example, the director charged with misconduct personally controls a large number of shares, or where the director's misconduct benefitted the corporation. This factor is relevant because it indicates that intervention by the court is necessary to ensure that a director who has committed gross misconduct will not simply be reelected to office. The trial court need not find that all seven factors are present in order to impose a ban under AS 10.06.463, but should take each factor into consideration.

Because neither the statute nor our case law required findings on these factors at the time Martinez was barred, we decline to impose these requirements on the superior court in this case. But we note that although the superior court did not phrase its findings explicitly in terms of the seven-factor test we announce today, its findings and conclusions suggest that five of the seven factors are present, including the likelihood of future misconduct. The superior court found that Martinez improperly charged Cape Fox for personal travel expenses, actively and intentionally covered up the misconduct at The Village Store, retaliated against directors and executives who inquired about the perceived irregularities at the store, and used his position as chairman of the board to intimidate the CEO in an attempt to prevent inquiries into misconduct. The dishonesty required for these actions and the evidence of abuse of power are sufficient to support a finding that Martinez was likely to commit misconduct in the future. The facts found by the superior court would also support a finding that Martinez's conduct was egregious, required a high degree of scienter, involved abuse of a position of trust in the company, and was motivated by personal economic gain. These findings of misconduct are sufficient to support the fifteen-year ban from board service

**26.** *See Purcell v. Vogt*, No. CV000175088, 2003 WL 21100656, at *4 (Conn.Super.Ct., Apr.30, 2003) (unpublished opinion); *Markovitz v. Markovitz*, 336 Pa. 145, 8 A.2d 46, 48 (1939).

**27.** The statute provided that a court "may prohibit, conditionally or unconditionally, and permanently or for such period of time as it shall determine" a person who commits certain types of securities fraud "from acting as an officer or director [of a public company] if the person's conduct demonstrates substantial unfitness to serve as an officer or director." *See SEC v. Patel*, 61 F.3d 137, 140–41 (2d Cir.1995). In 2002 Congress changed the test from "substantial unfitness to serve" to "unfitness to serve" because it believed that courts were applying too stringent a standard. Sarbanes–Oxley Act of 2002, Pub.L. No. 107–204, § 305(a), 116 Stat. 745 (codified at scattered sections of 11, 15, 18, 28, and 29 U.S.C.); *see also* Michael Dailey, *Comment, Officer and Director Bars: Who is [Substantially] Unfit to Serve After Sarbanes–Oxley?*, 40 Hous. L.Rev 837 (2003) (describing why Congress changed the wording of the test and the contours of the new test).

**28.** *See Patel*, 61 F.3d at 141; *see also SEC v. First Pacific Bancorp*, 142 F.3d 1186, 1193 (9th Cir. 1998).

**29.** *See Patel*, 61 F.3d at 141(citing Jayne W. Barnard, *When is a Corporate Executive "Substantially Unfit to Serve"?*, 70 N.C.L.Rev. 1489, 1492–93 (1992)).

originally imposed by the superior court. We therefore conclude that the lifetime ban from service on the Cape Fox board should be reduced to fifteen years on remand.

### C. The Superior Court Did Not Err in Not Making a Specific Finding Regarding Martinez's Unclean Hands Defense.

■■■ Martinez argues that the superior court failed to satisfy the requirements of Civil Rule 52(a) because it did not make any specific findings on the defense of unclean hands in its findings of fact and conclusions of law.

We have held that where a party properly asserts a defense and presents evidence related to that defense, Rule 52(a) requires the trial court to make specific findings regarding the defense.[30] But Martinez's attorney conceded at oral argument that he did not present evidence of Cape Fox's unclean hands at the second trial and did not submit any evidence of this sort to the court prior to its decision on the requested equitable remedy of a ban from board service. Martinez's memorandum on post-verdict issues asserts that Cape Fox has unclean hands, but does not include exhibits or other evidence supporting these assertions. Martinez's attorney conceded at oral argument that he did not request an evidentiary hearing to present evidence supporting the unclean hands defense. Because no evidence was presented to the superior court regarding the unclean hands defense, the superior court was not required to make a specific finding on this defense.

### D. Martinez Is Not Entitled to Partial Indemnification Under AS 10.06.490(c).

■■■ Martinez argues that because the money judgment against him on retrial was much smaller than the judgment in the first trial, he has partially prevailed and is therefore entitled to indemnification under AS 10.06.490(c). He argues that the judgment

against him should have included a partial offset for his defense expenses.

Alaska Statute 10.06.490(c) describes the circumstances in which a corporation must indemnify directors and others for legal expenses:

> To the extent that a director, officer, employee, or agent of a corporation has been successful on the merits or otherwise in defense of an action or proceeding referred to in (a) or (b) of this section, or in defense of a claim, issue or matter in the action or proceeding, the director, officer, employee, or agent shall be indemnified against expenses and attorney fees actually and reasonably incurred in connection with the defense.

Martinez is not entitled to indemnification of his expenses under AS 10.06.490(c). He was not partially successful in the defense of this action; the jury found against Martinez on all issues. The fact that the jury in the second trial assessed a smaller damage award against Martinez than the jury in the first trial does not render his defense partially successful for purposes of AS 10.06.490(c). We therefore affirm the superior court's decision not to grant the offset and to enter judgment for $23,542.63 against Martinez.

### V. CONCLUSION

We hereby AFFIRM the judgment against Martinez, VACATE the order barring Martinez for life from board service, and REMAND to the superior court with instructions to enter an order barring Martinez from service on the Cape Fox board for a period of fifteen years.

■■■■■■

---

30. *See Graham v. Rockman,* 504 P.2d 1351, 1354–55 (Alaska 1972) (requirements of Rule 52(a) not met where trial court concluded that defendant had no defenses to liability but did not make specific findings on evidence presented regarding asserted defense of assumption of risk).