Robert J. HENRICHS, Appellant,

v.

CHUGACH ALASKA CORPORATION,
Appellee.

No. S–13094.

Supreme Court of Alaska.

April 22, 2011.

Petition for Rehearing Filed June 13, 2011.

Fred W. Triem, Petersburg, for Appellant.

Elizabeth P. Hodes and Joseph L. Reece, Davis Wright Tremaine LLP, Anchorage, for Appellee.

Before: CARPENETI, Chief Justice, FABE, WINFREE, and CHRISTEN, Justices.

*OPINION*

CHRISTEN, Justice.

## I. INTRODUCTION

A former director, accused of misconduct while serving as chair of a corporate board, appeals a jury verdict finding him liable for breach of fiduciary duty. He also appeals a superior court order banning him from serving on the corporation's board of directors for five years. The director argues the superior court erred by: (1) refusing to instruct the jury on what he refers to as a statutory "safe harbor" defense; (2) instructing the jury that he could be found liable for ordinary negligence; (3) refusing to instruct the jury on his equitable defenses; and (4) bar-

ring him from serving on the board of directors for five years. Because we find no reversible error in the superior court's jury instructions, and because the superior court did not abuse its discretion by banning the director from serving on the corporation's board for five years, we affirm the superior court's rulings.

## II. FACTS AND PROCEEDINGS

In 2004 the board of directors of Chugach Alaska Corporation (CAC) was divided into two factions, one led by incumbent chairwoman Sheri Buretta, who had chaired the board for several years, and the other by board member Robert Henrichs. In March 2004 a coalition of board members voted to remove Buretta as chair and install Henrichs in her stead. Henrichs served as chairman for approximately six months, but the board remained divided during that time. Following the October 2004 annual meeting, a new board majority voted to reinstate Buretta.

After the 2004 annual meeting, CAC brought this lawsuit alleging that Henrichs had engaged in a pattern of misconduct during his chairmanship that violated his duties to the corporation. CAC's complaint alleged that Henrichs had: (1) used corporate funds for personal expenses; (2) refused to return corporate proxy records owned by CAC; (3) breached his fiduciary duty by taking corporate actions beyond his discretionary powers without the approval of the full board of directors; (4) breached his fiduciary duty by interfering with the rights of shareholders and other directors; (5) harassed other board members by orchestrating a series of meritless complaints against them with the Division of Banking, Securities, and Corporations; and (6) authorized a false and misleading proxy solicitation letter to encourage the election of directors who would protect his position as board chair.[1] CAC's complaint framed these allegations as claims for conversion, misrepresentation, a general breach of fiduciary duty, and a specific breach of fiduciary duty for authorizing a false and misleading proxy solicitation letter.

Henrichs filed an answer denying liability, asserting several affirmative defenses, and stating counterclaims for malicious prosecution and abuse of process. The superior court dismissed the malicious prosecution counterclaim before trial and entered a directed verdict rejecting the abuse of process counterclaim.

### A. The Jury Verdict

The case was tried to a jury in June 2007. The jury found that Henrichs had committed conversion and misrepresentation by refusing to return proxy records in his possession. The jury also found that he had committed a general breach of fiduciary duty and a specific breach of fiduciary duty for authorizing a false or misleading letter soliciting proxies for the annual shareholder meeting. The jury awarded no damages for conversion, misrepresentation, or general breach of fiduciary duty, but it awarded CAC $34,500 for specific breach of fiduciary duty based on the proxy solicitation letter. Because Henrichs did not appeal the jury's findings on the conversion or misrepresentation claims, we discuss those claims only to the extent they serve as a basis for the claims he does appeal.

#### 1. General breach of fiduciary duty

CAC argued at trial that Henrichs committed a general breach of his fiduciary duties. Specifically, the superior court's post-trial findings observed that CAC presented evidence that Henrichs breached his duty by:

> [H]olding mini-board meetings and making decisions with only his Board faction present; refusing to comply with corporate bylaws requiring that a special meeting of the shareholders be held in response to a shareholder petition; taking action without any Board discussion or approval and ignoring rules to which the Board had long adhered in the conduct of Board meetings; personally mistreating Board members, shareholders, and employees of CAC, and retaliating against other directors who challenged or disagreed with his decisions by excluding them from participation on the Board and expending corporate funds to file meritless complaints against them

---

**1.** Henrichs also served as chair of the board's proxy committee during the relevant time period.

with the Division of Banking and Securities.

The jury found Henrichs breached his general fiduciary duty but awarded no damages for this claim.

### 2. Specific breach of fiduciary duty: the "late-bird" letter

The election campaign for three positions on CAC's board of directors began in the summer of 2004 and continued through October. That year, CAC's board nominated one candidate for each open position on the board, thereby presenting a "board slate" to the shareholders for the annual election. Other candidates not endorsed by the board conducted independent campaigns for positions on the board. CAC and at least some of the independent candidates mailed campaign materials to shareholders, encouraging them to vote by proxy if they would not be able to attend the annual meeting. In early October, Henrichs authorized a "late-bird" proxy solicitation letter to be mailed to CAC's shareholders.[2] The late-bird letter encouraged shareholders to participate in the October election by returning signed proxies. It offered shareholders who returned "valid" proxies to the inspector of elections by 5:00 p.m. on October 20th entry into a drawing for $17,500 in prize money. The late-bird letter also stated that "[t]he corporation has filed a formal complaint with the State Division of Banking, Securities and Corporations concerning a non-board [proxy] solicitation" and that "the validity of proxies provided in response to that solicitation may be in question."

Shortly after the late-bird letter was mailed, several shareholders filed complaints with the Division of Banking, Securities, and Corporations (Division) alleging that the late-bird letter contained materially false and misleading statements. The Division was concerned that "a sentence within the letter could inappropriately influence the shareholder's choice of proxy," and it eventually determined the late-bird letter contained a "materially misleading statement." At the Division's request, CAC mailed another letter to shareholders clarifying the late-bird letter's allegedly false and misleading statement. Specifically, the corrective letter explained that "all shareholders whose shares are voted either in person or by way of a proxy that is valid at the time voted will be eligible for prizes."

After the 2004 election, a new board majority reinstated Buretta as chair, but Henrichs continued to serve as a member of the board until he lost reelection in 2005. In April 2005 the Division and CAC entered into a consent agreement requiring CAC to pay the Division $10,000 towards the expenses it incurred investigating shareholders' complaints that the late-bird letter contained a false or misleading statement.

The jury heard considerable evidence clarifying the concerns about the late-bird letter. Buretta testified that she thought the late-bird letter was meant to imply that "our [non-board slate] proxies were invalid and that [shareholders] needed to send in new proxies because [the board slate was] ... behind." CAC also introduced a letter CAC's Investigation Committee sent to Henrichs pointing out questionable aspects of the late-bird letter. First, though the late-bird letter stated that its purpose was to encourage shareholder participation in the election and "ensure a quorum," the Investigation Committee observed that a quorum had already been established by October 5, 2004, before the late-bird letter was mailed. Second, the late-bird letter was signed "Sincerely—The Chugach Corporation Board of Directors" even though four of the board's nine

---

**2.** Corporate boards often send letters to their shareholders encouraging them to vote in corporate elections via proxy if they do not plan to attend the annual shareholder meeting. Michael D. Waters, Proxy Regulation 1 (Practising Law Institute 1992) ("Management routinely solicits proxies for annual and special meetings of shareholders."). The jury heard testimony explaining that these letters are sometimes referred to as "early-bird letters" and may be accompanied by a prize offer for those who vote. Ms. Buretta testified: "[N]ormally the corporation will send out an ... early bird letter to the shareholders with a proxy with the intent to get them to file their ... proxies early so that a quorum could be established to make sure that we can conduct business." Here, the challenged proxy solicitation letter offering prize money was sent shortly before the annual meeting, and the parties referred to it as a "late-bird" letter.

members did not know the letter existed until after it had been sent to shareholders. The Investigation Committee concluded that the "clear implication" of the late-bird letter was that "those who return proxies for the non-board [slate] solicitation may not be eligible for the prizes, and if a shareholder wants to be sure to be eligible for the late-bird prize, the only way to do that is to turn in a Board [slate] proxy."

The jury decided that Henrichs breached his fiduciary duty by authorizing the allegedly false and misleading late-bird letter and awarded CAC $34,500 in damages.

### B. CAC's Equitable Remedy: The Ban From Board Service

CAC's complaint also sought an order "permanently barring Henrichs from reelection to the Board of Directors of [CAC]" because of his conduct while serving as chairman of the board. Relying on the jury's findings and on its own review of the evidence presented at trial, the superior court entered findings of fact, conclusions of law, and a post-trial order banning Henrichs from serving on CAC's board of directors for five years. The order described the actions Henrichs took during his term as "serious and egregious" and as the type of misconduct "sufficient to impose a bar against future service."

Henrichs appeals both the jury's finding that he breached his fiduciary duties and the superior court's order banning him from serving on CAC's board for five years. He claims that: (1) the superior court erroneously failed to instruct the jury on what he refers to as the statutory "safe harbor" defense in AS 10.06.450(b); (2) his decision to issue the late-bird proxy solicitation letter was protected by the business judgment rule and therefore he could only be held liable if found grossly negligent; (3) the superior

court should have instructed the jury on his equitable defenses and considered what actions CAC took toward him; and (4) the superior court erred when it barred him from serving on CAC's board for five years by (a) relying on an erroneous jury verdict, (b) failing to apply the statutory "safe harbor" provisions, (c) applying an ordinary negligence standard to review his business decisions, and (d) declining to consider his equitable defenses.

### III. STANDARD OF REVIEW

We review a superior court's determinations on questions of law de novo [3] and on questions of fact for clear error.[4] "Because there is a range of reasonable decisions a trial judge might make in determining how long a bar from corporate board service to impose upon a defendant, this determination is reviewed for abuse of discretion." [5]

"In reviewing the superior court's rulings on jury instructions, we apply our independent judgment to determine whether the challenged or refused instruction states the law correctly." [6] "Errors in jury instructions are not grounds for reversal unless the errors are prejudicial." [7] We "evaluate whether any error was prejudicial by putting ourselves in the position of the jurors and determining whether the error probably affected their judgment." [8] "The appellant bears the burden of proving prejudicial error." [9]

### IV. DISCUSSION

### A. Even If Refusing To Repeat The Statutory "Reliance On Counsel" Language In Successive Jury Instructions Was Error, It Was Harmless.

Henrichs argues that it was error to fail to instruct the jury on the statutory "safe har-

---

**3.** *Dugan v. Atlanta Cas. Cos.*, 113 P.3d 652, 654 (Alaska 2005).

**4.** *In re Protective Proceedings of W.A.*, 193 P.3d 743, 748 (Alaska 2008).

**5.** *Martinez v. Cape Fox Corp.*, 113 P.3d 1226, 1229 (Alaska 2005).

**6.** *City of Kodiak v. Samaniego*, 83 P.3d 1077, 1082 (Alaska 2004).

**7.** *State v. Carpenter*, 171 P.3d 41, 54 (Alaska 2007).

**8.** *City of Kodiak*, 83 P.3d at 1082 (internal quotation marks omitted).

**9.** *Id.*

bor" defense [10] in AS 10.06.450(b).[11] This argument focuses on two jury instructions, # 13 and # 14. Instruction # 13 was entitled, "Breach of Fiduciary Duty," and it was patterned on AS 10.06.450(b). It included the statement "[a]n officer is entitled to rely on information, opinions, reports or statements, prepared or presented by counsel, public accountants, or other persons as to matters that the officer reasonably believes to be within the person's professional or expert competence." Instruction # 14 was entitled "Breach of Fiduciary Duty_Misleading Proxy." Instruction # 14 focused on the late-bird proxy solicitation letter and explained that "Chugach claims that one way that Henrichs breached his fiduciary duty was by authorizing a false and misleading proxy solicitation."

At trial, Henrichs presented evidence that the late-bird letter may have been reviewed by attorneys before it was mailed but he did not present evidence that the late-bird letter was actually approved by counsel or that he relied on the advice of counsel when he authorized the letter. Henrichs nevertheless urged the superior court to include the "reliance on counsel" language from AS 10.06.450(b) in both Instruction # 13 and Instruction # 14. The superior court included the language in Instruction # 13 but did not repeat it in Instruction # 14. On appeal, Henrichs contends the superior court's decision not to repeat the "safe harbor" language in Instruction # 14 caused the jury to fail to consider "whether Mr. Henrichs was relying on the advice of counsel when he authorized

the distribution of the late-bird proxy statement to shareholders."

■ We do not find this argument persuasive. We have consistently held that "[j]ury instructions are to be analyzed as a whole, rather than in isolation" and "[i]n reviewing jury instructions, the relevant inquiry is whether the instructions inform the jury of the applicable law." [12] But we need not decide whether in this case the two instructions, analyzed as a whole, informed the jury of the applicable law because Henrichs did not provide evidence at trial to support that the letter was approved by counsel, or that he relied on counsel's advice when he authorized it. As such, the evidence did not show that Henrichs could avoid liability because he relied on the advice of counsel. Moreover, Henrichs failed to demonstrate that any error in the superior court's refusal to repeat the "reliance on counsel" language "probably affected" the judgment of the jury and was therefore prejudicial.[13]

**B. The Superior Court Did Not Err By Refusing To Give A Gross Negligence Instruction.**

■ The jury found that Henrichs breached his general fiduciary duty and that his authorization of the late-bird proxy solicitation letter breached a specific fiduciary duty. Henrichs argues that it was error to instruct the jury that he could be found liable for breaching his fiduciary duties based on the ordinary negligence standard of care, rather than gross negligence. His contention is that the business judgment rule insulates

**10.** Henrichs refers to the statutory defense as a "safe harbor" defense. We refer to it as the "reliance on counsel" defense because this more closely tracks the language used in AS 10.06.450(b).

**11.** AS 10.06.450(b) states in relevant part:

A director shall perform the duties of a director, including duties as a member of a committee of the board on which the director may serve, in good faith, in a manner the director reasonably believes to be in the best interests of the corporation, and with the care, including reasonable inquiry, that an ordinarily prudent person in a like position would use under similar circumstances. Except as provided in (c) of this section, *a director is entitled to rely on information, opinions, reports or statements,*

*including financial statements and other financial data, in each case prepared or presented by ... (2) counsel,* public accountants, or other persons as to matters that the director reasonably believes to be within the person's professional or expert competence....

(Emphasis added.) AS 10.06.483(e) has similar language regarding a corporate officer's ability to rely on advice of counsel.

**12.** *Lynden Inc. v. Walker,* 30 P.3d 609, 617 (Alaska 2001) (internal citations omitted).

**13.** *See City of Kodiak,* 83 P.3d at 1082 (we "evaluate whether any error was prejudicial by putting ourselves in the position of the jurors and determining whether the error probably affected their judgment.")

directors from liability unless their conduct is shown to be grossly negligent on review. We agree with CAC that the business judgment rule does not protect the type of conduct at issue in this case, and that CAC was not required to show that Henrichs was grossly negligent.[14]

### 1. The business judgment rule in Alaska common law

Alaska's common law business judgment rule is more than thirty years old. Beginning with *Alaska Plastics, Inc. v. Coppock*,[15] the seminal Alaska case on the business judgment rule, our case law has embodied a high degree of judicial deference to good faith corporate decision making. Our case law supports the proposition that for a director to be personally liable for good faith decisions made in the supervision and management of a corporation's business affairs, a claimant must show conduct that amounts to something more than ordinary negligence. In *Alaska Plastics*, a fire destroyed a corporation's small factory.[16] The corporation's shareholders filed a derivative lawsuit alleging that the directors breached their duty of care by failing to insure the factory, keeping large reserves of cash in non-interest bearing checking accounts, and loaning an employee money at a below-market interest rate.[17] We concluded that the evidence was "insufficient to establish a breach of duty towards the corporation," and explained:

> Judges are not business experts . . . a fact which has become expressed in the so-called "business judgment rule." The essence of that doctrine is that courts are reluctant to substitute their judgment for that of the board of directors unless the

board's decisions are unreasonable. No proof was presented that the alleged acts were unreasonable in the sense that they would not have been taken by an ordinarily prudent man . . . in the management of his own affairs of like magnitude and importance.[18]

Although *Alaska Plastics* suggested that a director could be held liable if the director failed to act as an "ordinarily prudent man," many would deem the decisions of the Alaska Plastics directors to be commercially unreasonable and negligent. The outcome of the case thus suggests that more than simple negligence must be demonstrated in order to hold a director liable for decisions reviewed under the business judgment rule.

We revisited the business judgment rule two years after the *Alaska Plastics* decision in *Betz v. Chena Hot Springs Group*.[19] There, two general partners voted a third general partner out of a partnership.[20] The jilted partner sued to invalidate his forced retirement or to dissolve the partnership, arguing that the other partners did not show reasonable cause to retire him.[21] We refused to imply a reasonable cause requirement into the partnership agreement, and explained:

> As with other business management decisions, the determination to retire a partner properly lies with the judgment and control of the general partners. Necessarily, such a decision is predicated upon the weighing and balancing of disparate considerations to which the court does not have access. Absent bad faith, breach of fiduciary duty, or acts contrary to public

14. CAC initially proposed a jury instruction describing the business judgment rule but that instruction was not given and Henrichs does not expressly argue on appeal that it should have been. The record does not disclose the reason the proposed business judgment rule instruction was not given, perhaps because the court and parties held at least one discussion about jury instructions off record. In *City of Nome v. Ailak*, we cautioned against off-the-record discussions between the court and counsel concerning jury instructions. 570 P.2d 162, 166 n. 4 (Alaska 1977). We reiterate here that trial courts should use care to create a complete record of decisions regarding jury instructions.

15. 621 P.2d 270 (Alaska 1980).

16. *Id.* at 273.

17. *Id.* at 273, 278.

18. *Id.* at 278 (internal citations and quotation marks omitted).

19. 657 P.2d 831 (Alaska 1982).

20. *Id.* at 832.

21. *Id.*

policy, we will not interfere with the management decisions of the firm.[22]

Six years after *Betz*, the legislature adopted a revised corporations code based on the Model Business Corporations Act (MBCA).[23] One provision, AS 10.06.450(b), requires that in performing their duties, directors must exercise "the care ... that an ordinarily prudent person in a like position would use under similar circumstances."

### 2. The common law business judgment rule was not modified by statute.

■■■ In *Shields v. Cape Fox Corp.*, we stated that "[t]he business judgment rule is set out in AS 10.06.450(b)" of the revised corporate code,[24] a statement that Henrichs urges us to reconsider. We take this opportunity to clarify that the adoption of AS 10.06.450(b) did not replace, redefine, or codify Alaska's common law business judgment rule. We "presume that the legislature is aware of the common law when enacting statutes" [25] and observe that neither the language nor legislative history of AS 10.06.450(b) suggests that the legislature intended the statute to abrogate or codify the common law rule.[26] Moreover, the authors

of the MBCA, on which Alaska's revised corporation code was based, "expressly disclaim[ed]" any intention to codify the business judgment rule "[b]ecause the elements of the business judgment rule and the circumstances for its application [were] continuing to be developed" by the courts.[27] Thus, corporate directors in Alaska continue to enjoy the heightened protection of the business judgment rule as set forth in Alaska common law.[28]

### 3. The business judgment rule does not protect the type of conduct at issue in this case.

■■■ Recognizing that the business judgment rule affords some degree of protection when the actions of corporate directors are reviewed, the remaining question is whether the rule shelters Henrichs from liability. Henrichs asserts that it does; he argues that the jury should have been instructed he could not be found liable for breaching his fiduciary duty to the corporation unless he was grossly negligent. But our court has never adopted the gross negligence standard as a measure of the business judgment rule's protection, and we decline to do so now.[29]

---

22. *Id.* at 835; *see also Bennett v. Weimar*, 975 P.2d 691, 697 (Alaska 1999) (quoting *Papalexiou v. Tower West Condo.*, 167 N.J.Super. 516, 401 A.2d 280, 286 (N.J.Super.Ch. Div.1979) ("Courts will not second-guess the actions of directors unless it appears that they are the result of fraud, dishonesty[,] or incompetence.")); *Wirum & Cash, Architects v. Cash*, 837 P.2d 692, 702 (Alaska 1992) ("Generally, partners are not liable to the partnership for failure to use ordinary skill and care in the supervision and management of business.").

23. *See* AS 10.06, *as enacted by* Ch. 166, SLA 1988; *see also* Daniel William Fessler, *The Alaska Corporations Code: The Forty–Ninth State Claims the Middle Ground*, 7 ALASKA L.REV. 1, 65 (1990).

24. 42 P.3d 1083, 1091 (Alaska 2002).

25. *Young v. Embley*, 143 P.3d 936, 945 (Alaska 2006).

26. *Cf. Kodiak Island Borough v. Exxon Corp.*, 991 P.2d 757, 761 (Alaska 1999) (noting legislature's intent to abrogate otherwise applicable common-law doctrines when statute provided for strict liability "[n]otwithstanding any other provision or rule of law").

27. MODEL BUS. CORP. ACT § 8.31(4th ed. 2009); MODEL BUS CORP ACT § 8.30 (3rd ed. Supp. 1989).

28. Henrichs challenges the statement in *Shields* that "liability under the business judgment rule does not differ appreciably from negligence liability." 42 P.3d at 1092. We clarify here that the business judgment rules does afford protection beyond a showing of mere negligence, but this case does not require that we define exactly what additional measure of protection is afforded by the business judgment rule.

29. *Shields* did not require us to define the degree of protection afforded by the business judgment rule because the conduct in that case was egregious and clearly of a character not protected under the common law rule. There, a director was accused of conversion, of actively covering up the misconduct of employees, and of retaliating against two directors by campaigning to unseat them for inquiring into irregularities and potential employee misconduct at the corporation's store. *Shields*, 42 P.3d at 1085; *see also Martinez v. Cape Fox Corp.*, 113 P.3d 1226, 1228 (Alaska 2005). We have never held that the business judgment rule insulates directors from personal liability for this type of volitional and egregious misconduct.

We have said that "[a]bsent bad faith, breach of a fiduciary duty, or acts contrary to public policy, we will not interfere with ... management decisions."[30] Here, the jury found that Henrichs had committed both a general breach of fiduciary duty and a specific breach of fiduciary duty by authorizing a false and misleading proxy solicitation letter. The superior court's own findings explained that CAC presented evidence showing Henrichs committed a "general overall breach of his fiduciary duties" by "holding mini-board meetings and making decisions with only his [b]oard faction present; refusing to comply with corporate bylaws requiring that a special meeting of the shareholders be held in response to a shareholder petition; ... and retaliating against other directors who challenged or disagreed with [him] by excluding them from participation on the [b]oard." The court's findings describe volitional conduct, including that Henrichs *knew and understood* that he was pushing the boundaries of the applicable rules and regulations" and that he "wanted to do more than he appropriately could do under those rules and regulations." (Emphasis added.) Finally, the superior court's order banning Henrichs from serving on CAC's board for five years observed that "[t]his case is about corporate governance" and "corporate integrity," and it concluded that the misconduct was "serious and egregious" and "sufficient to impose a bar against future service." By finding that the conduct warranted a five-year bar from future board service, the superior court necessarily found "fraudulent or dishonest acts, gross neglect of duty, or gross abuse of authority or discretion."[31]

Given the nature of the conduct found by the superior court in this case, the superior court's decision not to give a separate jury instruction on the business judgment rule was not error. And because we have never measured the degree of protection afforded by the business judgment rule in terms of gross negligence, the superior court's decision not to instruct the jury that Henrichs could not be found liable unless he was grossly negligent was correct.

## C. The Superior Court Did Not Err By Refusing To Instruct The Jury On The Unclean Hands Defense.

Henrichs argues that it was error to fail to instruct the jury on his equitable defenses, including the "unclean hands" defense. He argues that breach of fiduciary duty claims sound in equity and that because the superior court instructed the jury on CAC's equitable claims, it should have instructed them on his equitable defenses. CAC counters that its breach of fiduciary duty claim was legal, not equitable, and that because the jury was only asked to provide an advisory opinion, there was no need to instruct the jury on the "unclean hands" defense.

The argument that breach of fiduciary duty claims "sound in equity" ignores the well-established principle that the nature of a claim—equitable or legal—depends on the remedy sought.[32] As CAC correctly observes, we have expressly rejected the idea that a breach of fiduciary duty claim is purely equitable when money damages are sought as part of the recovery.[33] Here, CAC sought money damages for conversion, misrepresentation, nondisclosure, and breach of fiduciary duty—all of these claims are legal, not equitable. CAC's only claim for equitable relief was its request for an order barring Henrichs from reelection to its board of directors.

**30.** *Betz v. Chena Hot Springs Group*, 657 P.2d 831, 835 (Alaska 1982).

**31.** AS 10.06.463 provides:

The superior court may, at the suit of the board or the shareholders holding at least 10 percent of the number of outstanding shares of any class, remove from office a director for fraudulent or dishonest acts, gross neglect of duty, or gross abuse of authority or discretion with reference to the corporation and may bar from reelection a director removed in that manner for a period prescribed by the court.

The corporation shall be made a party to the suit.

**32.** *See Shields*, 42 P.3d at 1092; *Vinson v. Hamilton*, 854 P.2d 733, 737 (Alaska 1993) (money damage claims are legal in nature).

**33.** *See Shields*, 42 P.3d at 1092 (claims of conversion, negligence, and breach of fiduciary duty are not equitable where plaintiff seeks money damages).

We have adopted the rule that "facts common to legal and equitable claims must first be tried to a jury and the primary equitable issues, if any, disposed of in light of the jury verdict."[34] However, "the trial court has discretion whether or not to use an advisory jury" and, if it uses one, the court may "accept or reject, in whole or in part, the verdict of the advisory jury" when deciding the equitable issues.[35] Because the trial court has broad discretion to rely, or to decline to rely, on an advisory jury when deciding equitable issues, we find no error in the superior court's refusal to instruct the jury on any equitable defenses.

### D. The Superior Court Did Not Err When It Banned Henrichs From Serving On CAC's Board Of Directors For Five Years.

■ The superior court itself ruled on CAC's claim that Henrichs should be banned from serving on CAC's board of directors, basing its decision on the jury's verdict and its own review of all the evidence presented at trial. The court applied AS 10.06.463 and the seven factors articulated in *Martinez v. Cape Fox Corp.* to rule on this claim.[36] The court concluded that the evidence and jury's findings were "sufficient to impose a bar against future [board] service" and entered an order banning Henrichs from serving on CAC's board for five years.

Henrichs challenges the ban on his corporate board service. He argues the superior court erred by: (1) relying on an erroneous jury verdict; (2) failing to apply the statutory "safe harbor" provisions; (3) applying an ordinary negligence standard to a business decision of a corporate officer; and (4) declining to consider the "equitable clean hands defense." Because these arguments are restatements of arguments we have already discussed, they can be quickly dispatched.

■ First, although Henrichs argues that the superior court adopted "any errors made by the jury as a result of faulty jury instructions" when it ruled on the request that Henrichs be banned from future board service, we have explained that we find no reversible error in the superior court's jury instructions. Second, because the superior court instructed the jury on the statutory "reliance on counsel" defense in AS 10.06.450(b), we have no reason to presume the superior court did not also consider that defense. Third, we conclude that the business judgment rule does not protect the character of misconduct at issue in this case and find no merit to the argument that Henrichs could only be found to have breached his fiduciary duty if he was shown to have been grossly negligent. As for the contention that the superior court erred by declining to consider the equitable "unclean hands" defense, Henrichs argues that if the court had "considered th[is] defense[ ] and rejected [it], the court should have said so in its [order]." But Civil Rule 52(a) only requires the superior court to make specific findings regarding a defense where the party properly asserts the defense and presents evidence related to it.[37] To successfully raise the unclean hands defense under Alaska law, a defendant must show: (1) "that the plaintiff perpetrated some wrongdoing"; and (2) "that the wrongful act related to the action being litigated."[38] Every wrongdoing Henrichs alleges CAC perpetrated against him pertained

---

**34.** *Municipality of Anchorage v. Baugh Const. & Eng'g Co.*, 722 P.2d 919, 928 n. 7 (Alaska 1986) (adopting rule from *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 508, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959)).

**35.** *State v. I'Anson*, 529 P.2d 188, 190 (Alaska 1974); *see also* Alaska Civil Rule 39(c) ("In all actions not triable of right by a jury the court . . . may try an issue with an advisory jury. . . ."); *Shields*, 42 P.3d at 1092; *Baugh Const. & Eng'g Co.*, 722 P.2d at 928 n. 7.

**36.** 113 P.3d 1226, 1233 (Alaska 2005). The factors are: (1) the egregiousness of the underlying violation; (2) the defendant's past record of misconduct; (3) the defendant's role or position at the time of the violation; (4) the defendant's degree of scienter; (5) the defendant's economic stake in the violation; (6) the likelihood that the misconduct will recur; and (7) whether there is reason to suspect that shareholder democracy will be insufficient to prevent reelection of an unfit director.

**37.** *Martinez v. Cape Fox Corp.*, 113 P.3d 1226, 1234 (Alaska 2005).

**38.** *Knaebel v. Heiner*, 663 P.2d 551, 554 (Alaska 1983).

to the 2005/2006 CAC annual directors election. Even if CAC took inappropriate actions against Henrichs during the 2005/2006 election, those actions are not "related to" the subject of this litigation—events during the six months in 2004 when Henrichs served as chairman of the board of directors. Because Henrichs presented no relevant evidence in support of his unclean hands defense, the superior court was not required to make specific findings addressing it.[39]

 Finally, Henrichs argues that the court erred by banning him from serving on CAC's board because his breaches of duty were not sufficiently serious to warrant a ban. This issue is not included in Henrichs's points on appeal or statement of issues presented for review. We agree with CAC that this argument was waived.[40] Further, our independent review of the record satisfies us that the court did not abuse its discretion by banning Henrichs from serving on CAC's board for five years. The superior court applied the correct statutory standard and carefully discussed each of the seven *Martinez* factors in its findings and conclusions.

## V. CONCLUSION

For the reasons set forth above, we AFFIRM the jury's verdict and the superior court's order in all respects.

STOWERS, Justice, not participating.

WINFREE, Justice, concurring.

WINFREE, Justice, concurring.

I write separately only to emphasize that AS 10.06.450(b) sets out the standard of care for corporate directors and nothing more:

A director shall perform the duties of a director, including duties as a member of a committee of the board on which the director may serve, in good faith, in a manner the director reasonably believes to be in the best interests of the corporation, and with the care, including reasonable inquiry, that an ordinarily prudent person in a like position would use under similar circumstances.[1]

The common law business judgment rule has not been codified in or otherwise affected by AS 10.06.450(b). But the common law business judgment rule may only be applied in favor of directors meeting the standard of care set out in AS 10.06.450(b). Professor Melvin A. Eisenberg has provided a meaningful contrast between the duty of care and the business judgment rule: the duty of care is a framework for reviewing the reasonableness of the corporate decision-making process, while the business judgment rule is a framework for reviewing the quality of a corporate decision.[2] Here Henrichs did not meet the standard of care for his decision-making process, and he is therefore not entitled to business judgment rule protection for the quality of his decisions.

**39.** *See Martinez,* 113 P.3d at 1234.

**40.** Alaska R.App. P. 204(e); *Laughlin v. Laughlin,* 229 P.3d 1002, 1007 n. 19 (Alaska 2010) ("[W]e will not treat issues that were argued in the brief but not set forth in the Points [on Appeal]." (quoting *Wetzler v. Wetzler,* 570 P.2d 741, 742 n. 2 (Alaska 1977))).

**1.** AS 10.06.450(b).

**2.** *E.g.,* Melvin A. Eisenberg, *The Divergence of Standards of Conduct and Standards of Review in Corporate Law,* 62 FORDHAM L.REV. 437, 439–40, 447 (1993); Melvin A. Eisenberg, *The Duty of Care of Corporate Directors and Officers,* 51 U. PITT. L.REV. 945, 948, 959 (1990).